In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3042

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

INES OLMEDA-GARCIA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 CR 67—**Rudolph T. Randa**, *Judge.*

ARGUED MAY 19, 2010—DECIDED JULY 29, 2010

Before FLAUM, MANION, and HAMILTON, *Circuit Judges*

FLAUM, *Circuit Judge.* Defendant-appellant argues that the district court committed a procedural error by disregarding his comment that a comparison of his case to those in so-called "fast track" districts might reveal an unwarranted sentencing disparity. The argument was not adequately developed and thus falls below the threshold of relevance. We find no error in the district court's decision not to address the point directly and affirm the judgment below.

## I. Background

Appellant Ines Olmeda-Garcia has a long criminal history that includes a July 2000 conviction for drunk driving, a 2002 conviction for cocaine trafficking, a 2002 conviction for battery of his girlfriend and her nine-year-old daughter, and three other drunk driving arrests. Appellant also has arrests for illegal entry into the United States, several batteries, burglary, sexual assault, failure to appear, and drug dealing. He has been deported from the United States on two prior occasions. The most recent one was in 2005, after appellant completed a 42-month sentence for drug trafficking.

In February 2009, Immigration and Customs Enforcement ("ICE") agents discovered that appellant was in custody in Milwaukee on drunk driving charges. On March 10, 2009, a grand jury sitting in the Eastern District of Wisconsin charged Olmeda-Garcia with possession with intent to deliver cocaine, being found in the United States following removal for an aggravated felony, and not having obtained the express consent of the government to re-apply for admission into the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On April 28, 2009, Olmeda-Garcia pleaded guilty to a single count of illegal re-entry. The Presentencing Investigation Report ("PSR") determined appellant's base offense level to be 8, with a 16-level increase for a prior felony drug trafficking offense for which the sentence exceeded 13 months, and a 3-level decrease for acceptance of responsibility. Accordingly, the PSR calculated a total offense level of 21 and a criminal history category of IV.

These parameters yielded a guideline sentencing range of 57 to 71 months. If the district court imposed a term of imprisonment longer than one year, the PSR found that the guidelines required the court to also impose a term of supervised release of at least two years, but not more than three years, on defendant-appellant.

At sentencing, the government recommended a sentence at the low end of the guideline range. Defense counsel recommended a sentence of 36 months. Olmeda-Garcia's attorney argued that appellant illegally reentered the country to see his children and that he would have no reason to come back in the future because his older child had returned to Mexico and appellant lost custody of the younger kids. An excerpt of the transcript captures remarks made by appellant's counsel on this topic as well as the one motivating the present appeal:

> [Olmeda-Garcia's] older child is no longer residing in the country. Has since returned to Mexico with his mother. And his younger children have—his parental rights have since terminated and they've been adopted. Although he has other contacts with many in the U.S., the children were his closest contacts and why he took the risk to come back in the United States.
>
> The recommendation is also guided, Your Honor—although this is a serious offense, it's not a violent offense. The 36 months recommendation [sic] is also guided by the fact that, Your Honor, had Mr. Olmeda-Garcia been arrested in any of the Districts that have the fast-track program, that would be a typical sentence that he would received.

And then finally, the recommendation is guided by the fact that, Your Honor, Mr. Olmeda-Garcia's guidelines here are primarily being ruled by one fact. That is for a prior drug conviction.

Appellant's counsel also pointed out that Olmeda-Garcia will suffer the collateral consequence of deportation. Appellant then exercised his right of allocution and spoke through an interpreter. He reiterated the story about coming back to the U.S. to find his family and being arrested for not having a valid driver's license right as he was about to leave the country for Mexico.

Prior to announcing appellant's sentence, the district court discussed Olmeda-Garcia's extensive contact with the criminal system, the fact that he operated under ten different aliases, and his fathering of several children out of wedlock while keeping a wife in Mexico. Given these circumstances, in an effort to "promot[e] respect for the law," the court imposed a sentence of 64 months. In doing so, the court made no mention of any potential disparity between appellant's term of imprisonment and those imposed on individuals in districts with a fast-track deportation program. Olmeda-Garcia argues that silence on this subject amounts to a procedural error that violates 18 U.S.C. § 3553(a).

## II. Discussion

Whether a district court followed proper sentencing procedure is a question of law that we review de novo. *United States v. Curby*, 595 F.3d 794, 796 (7th Cir. 2010).

Under *Gall*, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007). We have remarked that "[a] judge who fails to mention *a ground of recognized legal merit* (provided it has a factual basis) is likely to have committed an error or oversight." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) (emphasis added). The sentencing court is not required to discuss each and every sentencing factor; it is enough if the record shows meaningful consideration of the types of factors set forth in § 3553(a). That is, the court "need not respond to every pithy argument that a defendant raises, just the 'principal' ones." *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009).

Given these standards, Olmeda-Garcia cannot prevail. The only potential error appellant identifies is the district court's silence with respect to a possible disparity that could arise between appellant's sentence and those available to defendants in other districts. Olmeda-Garcia's counsel did not adequately develop this argument and the district court was entitled to hand down an otherwise procedurally and substantively sound sentence without expressly discussing the point. *Cf. Cunningham*, 429 F.3d at 679 ("[A] judge's failure to discuss an immaterial or insubstantial dispute relating to the proper sentence would be at worst a harmless error.").

The fast-track program began in 1994 in the Southern District of California, where federal courts were faced with more than 600,000 arrests annually at the border with

Mexico. *See* Alan D. Bersin, *Reinventing Immigration Law Enforcement in the Southern District of California*, 8 Fed. Sentencing Rep. 254 (1996). The program allowed "federal prosecutors to offer shorter sentences to defendants who plead guilty at an early stage in the prosecution and agree to waive appeal and other rights." *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 739 (9th Cir. 2009). "In 2003, Congress explicitly authorized downward sentencing departures for fast-track programs in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ('PROTECT Act'), Pub. L. No. 108-21, § 401(m), 117 Stat. 650 (2003). The PROTECT Act directed the Sentencing Commission to 'promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney.'" *Id*. Thereafter, the Attorney General issued a memorandum outlining criteria for the program. *Memorandum from Attorney General John Ashcroft Setting Forth Justice Department's "Fast-Track" Policies* (Sept. 22, 2003), 16 Fed. Sent. Rep. 134 (Dec. 2003). The Memorandum restricted the program to districts with an exceptionally large number of immigration cases that could not be handled by the state, and further conditioned its application to individual defendants on their willingness to waive pre-trial motions, right to habeas corpus, and right to appeal, inter alia. The program is not applicable to individuals charged with a "crime of violence" listed under 28 C.F.R. § 28.2 (2009).

The Eastern District of Wisconsin does not have a formal fast-track program in place, but appellant's counsel had to do more than merely allude to that fact to create an argument that the district court had to consider. Olmeda-Garcia never attempted to demonstrate that he would be eligible for a 4-level offense-level reduction in a fast-track district. In fact, his counsel's comments must be read quite generously to find even the seed of an argument about potential unwarranted sentencing disparities relevant under 18 U.S.C. § 3553(a)(6). Since appellant did not establish that sentences available under the fast-track program are comparable to his own, we cannot fault the district court for skipping over this particular point. *See United States v. Ramirez-Silva*, No. 09-3365, 2010 U.S. App. LEXIS 6766, at *10-11 (7th Cir. Apr. 1, 2010) ("Counsel failed to explain, for example, (1) the minimum eligibility thresholds set out by United States Attorneys' offices with approved fast-track programs, (2) whether the two months that Ramirez-Silva waited after his indictment before pleading guilty would have put him on a fast-track in any district, (3) whether fast-track defendants must waive their right to appeal, (4) whether there are differences among fast-track districts as to the amount of sentencing consideration given, and (5) whether Ramirez-Silva met any disqualifying criteria (such as his prior conviction for alien smuggling or his violation of supervised release). The district court properly disregarded the argument because Ramirez-Silva never explained or even asserted that he would be eligible for a fast-track reduction in *any* district.") (citations omitted); *see also United States v.*

*Mejia*, 461 F.3d 158, 162-63 (2d Cir. 2006) (describing a similar argument as unavailing because it "rests on a false equivalence between (on the one hand) defendants in fast-track jurisdictions who receive a benefit in exchange for the acceptance of certain detriments, and (on the other hand) a defendant in Mejia's position, who claims the benefit without suffering the detriment. As Mejia points out, he did not have the opportunity to make the bargain; by the same token, the bargain has not been made, and no sentencing principle requires the sentencing court to mimic the transaction or compensate for its unavailability.").

We note here that even if Olmeda-Garcia adequately substantiated his position that the existence of fast-track programs in other districts generates a sentencing disparity, he would run into precedent that forbids district courts in this Circuit from deeming any such sentencing disparity "unwarranted" because it is a product of express legislative choice. *See United States v. Galicia-Cardenas*, 443 F.3d 553 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539 (7th Cir. 2006). Olmeda-Garcia argues that the Supreme Court's holding in *Kimbrough v. United States*, 552 U.S. 85, 110 (2007), which clarified that district court judges may consider the disparity created by the crack cocaine guidelines during sentencing even in routine cases, requires us to revisit the aforementioned precedent. Given the narrow posture of this appeal, however, we need not reach this contention today.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.