NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 26, 2011
Decided February 15, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 10-1157

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 08 CR 1022-1 |
| CELESTINO ABASTA-RUIZ, *Defendant-Appellant*. | Rebecca R. Pallmeyer, *Judge*. |

**O R D E R**

Celestino Abasta-Ruiz was removed from the United States but returned without permission. He pleaded guilty to unlawful presence, 8 U.S.C. § 1326(a), and was sentenced within the guidelines range to 77 months' imprisonment. On appeal he argues that the sentencing court failed to consider, as a ground in mitigation, the absence of a "fast track" program in the Northern District of Illinois. Because the court did consider but rejected the appellant's fast-track argument, we affirm the judgment.

Abasta-Ruiz is a Mexican citizen who has lived in the United States illegally since 1985. He was removed to Mexico in 1998 after convictions for armed robbery, carjacking, unlawful use of a firearm, and battery. But he returned to the United States after less than a

month in Mexico, and in 1999 he was arrested for violating his parole. He was removed again in 2000, and within two months he was back in this country. For several months in 2004 he provided information to the DEA in a money-laundering investigation. Then in late 2008 he was detained after a traffic stop and transferred to the custody of Immigration and Customs Enforcement. He was charged with violating § 1326(a).

At sentencing Abasta-Ruiz argued that a term of imprisonment below the guidelines range was necessary to compensate for the leniency given to some violators of § 1326(a) in districts with "fast track" programs. Sixteen districts have adopted fast-track or "early disposition" programs for defendants convicted under § 1326(a). These programs allow for a reduced sentence if the defendant meets the particular district's criteria, which vary but generally require a prompt guilty plea and waiver of appeal. *See* U.S.S.G. § 5K3.1; *United States v. Reyes-Hernandez*, 624 F.3d 405, 409-10 (7th Cir. 2010). The Northern District of Illinois does not have a fast-track program. Abasta-Ruiz argued that his prison sentence should be lowered to 51 months, the bottom of the range which, he asserted, would have applied in a district with a fast-track program. At sentencing the district court calculated a total offense level of 21 and a Category VI criminal history, yielding a guidelines imprisonment range of 77 to 96 months. The district court rejected Abasta-Ruiz's argument for a prison sentence below that range and sentenced him to 77 months.

On appeal Abasta-Ruiz argues that *Reyes-Hernandez* requires district courts to consider the "facially obvious" disparities created by the absence of a fast-track program. Until recently our precedents did not allow a district court to impose a below-range sentence solely because the prosecuting district lacks a fast-track program. *See United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 543 (7th Cir. 2006). But in *Reyes-Hernandez*, which had been argued and was under advisement when Abasta-Ruiz was sentenced, we reconsidered our approach and now recognize that sentencing judges have the discretion to consider the absence of a fast-track program in applying the § 3553(a) factors, *id.*, 624 F.3d at 417.

Abasta-Ruiz's argument on appeal has no merit because, contrary to his contention, the district court *did* consider the potential for disparate treatment resulting from the absence of a fast-track program in northern Illinois. At the sentencing hearing the district court acknowledged Abasta-Ruiz's contention that "tons of case law" existed about the differences in sentences among districts with and without fast-track programs. The court also acknowledged that Abasta-Ruiz might have benefitted from a fast-track program in another district. The court explained, however, that it would not view Abasta-Ruiz as a

good candidate for leniency in *any* district.  The district judge stated:

> The wisdom of those programs, it seems to me, may be questionable in light of the fact that Mr. Abasta has viewed the borders apparently as a revolving door.  He returned not after a period of time but almost immediately to the United States after his deportation.  And it seems to me that an extremely low sentence would not be appropriate because it wouldn't convey to Mr. Abasta that I at least believe that the laws are to be enforced and that violations are to be taken seriously.

The district court went on to describe some of the circumstances that weighed against a lenient sentence, including Abasta-Ruiz's extensive criminal history (Category VI, the highest), the likelihood he would return again to be with his girlfriend and their five children, and the need for the sentence to promote respect for the law and deter a future violation of § 1326(a).  Thus, the court anticipated our opinion in *Reyes-Hernandez* and proceeded as that decision suggests; the district judge evaluated Abasta-Ruiz's argument in mitigation but concluded that his particular circumstances weighed against extending leniency based on fast-track considerations.  To say that the court did not meaningfully consider the fast-track argument, as Abasta-Ruiz does, is simply incorrect.

In any event, Abasta-Ruiz did not establish that he would have been eligible for a fast-track adjustment in any other judicial district.  *See Reyes-Hernandez*, 624 F.3d at 420; *United States v. Olmeda-Garcia*, 613 F.3d 721, 724 (7th Cir. 2010).  In a sentencing memorandum he stated that he had been willing to waive his rights to file pretrial motions, to take a direct appeal, and to attack his conviction under 28 U.S.C. § 2255.  But Abasta-Ruiz did not address whether the nine months he waited to plead guilty would have eliminated him from a fast-track disposition in *every* district.  Nor did he contemplate whether he met any other disqualifying criteria.  *See Olmeda-Garcia*, 613 F.3d at 724 (citing *United States v. Ramirez-Silva*, No. 09-3365, 2010 WL 1258239, at *4 (7th Cir. Apr. 1, 2010)).  His offense level, standing alone, would have limited the reduction available to him in four fast-track districts.  And some districts have further restrictions, such as disqualifying a defendant with a prior conviction for a crime of violence.  *See United States v. Gomez-Herrera*, 523 F.3d 554, 564 n.5 (5th Cir. 2008).  Abasta-Ruiz was previously convicted of armed robbery and carjacking, both crimes of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Abasta-Ruiz also argues that the district court failed to consider his cooperation with the DEA.  But that contention is meritless because his only legal entitlement was to have the district court consider the argument, and that it did.  *See United States v. Etchin*, 614 F.3d 726, 740-41 (7th Cir. 2010); *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010).  The district court discussed at length Abasta-Ruiz's cooperation with the government and said that it sentenced him at the bottom of the guidelines range because of his cooperation.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.