# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3932

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SERGIO SANDOVAL RAMIREZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 09 CR 50023-1—**Frederick J. Kapala**, *Judge.*

No. 10-2190

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANCISCO OCAMPO-PINEDA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 632-1—**Virginia M. Kendall**, *Judge.*

No. 10-2689

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LUIS A. MANDUJANO-GONZALEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09 CR 586-1—**Amy J. St. Eve**, *Judge.*

ARGUED APRIL 27, 2011—DECIDED JULY 20, 2011

AMENDED DECEMBER 23, 2011[*]

Before CUDAHY, EVANS[**], and TINDER, *Circuit Judges.*

PER CURIAM. We have consolidated these appeals to
answer a recurring question: What evidentiary showing
must a defendant charged with being found in the

---

[*] This opinion is being released initially in typescript form.

[**] Circuit Judge Terence T. Evans died on August 10, 2011, and
did not participate in the amended decision of this case, which
is being resolved by a quorum of the panel under 28 U.S.C.
§ 46(d).

United States after previously having been deported, 8 U.S.C. § 1326(a), make before a district court is obliged to consider his request for a lower sentence to account for the absence of a fast-track program in that judicial district? The question has been percolating since we decided *United States v. Reyes-Hernandez*, 624 F.3d 405, 417, 420 (7th Cir. 2010), which permits sentencing courts to compensate for fast-track disparities but emphasizes that no district judge is required to evaluate this mitigating argument until the defendant demonstrates that he would have been eligible to participate in a fast-track program and, in fact, would have "pursued the option" had it been available. The contours of this threshold qualification have not been defined in a published opinion, but four nonprecedential orders offer helpful guidance. *See United States v. Vazquez-Pita*, 411 F. App'x 887 (7th Cir. 2011); *United States v. Morant-Jones*, 411 F. App'x 885 (7th Cir. 2011); *United States v. Abasta-Ruiz*, 409 F. App'x 949 (7th Cir. 2011); *United States v. Torres-Vasquez*, 406 F. App'x 40 (7th Cir. 2010). And in one of these appeals now before us, we directed the parties to submit supplemental statements addressing the question.

We hold that a district court need not address a fast-track argument unless the defendant has shown that he is similarly situated to persons who actually would receive a benefit in a fast-track district. That means that the defendant must promptly plead guilty, agree to the factual basis proffered by the government, and execute an enforceable waiver of specific rights before or during the plea colloquy. It also means that the defendant must

establish that he would be eligible to receive a fast-track sentence in at least one district offering the program and submit the likely imprisonment range in that district. Unless and until the defendant meets these preconditions, his "disparity" argument is illusory and may be passed over in silence. Moreover, a defendant would be well advised to provide information on eligibility and the likely imprisonment range in any other district in which he would qualify for a fast-track sentence and also provide a candid assessment of the number of programs for which he would not qualify. This type of information might strengthen the defendant's disparity argument and would prove very useful to the sentencing court. Such information would allow the sentencing court to appreciate the *extent* of the disparity, if any, that would result if the defendant was not given a sentencing break. Of course, the government would be free to argue that the defendant would be ineligible for a reduction in a fast-track district, that the likely imprisonment range in any district where he would be eligible would be different from that suggested by the defendant, and that any fast-track disparity would not warrant a lower sentence anyway.

## I.

The three defendants in our consolidated case are Mexican nationals who were living in the United States illegally. Luis A. Mandujano-Gonzalez first entered this country without authorization in 1998. Two years later he was convicted in Indiana of battering his girlfriend and

her young son. The government removed him to Mexico after his release from prison in 2006, but Mandujano returned to the United States unlawfully. In 2009, police in Waukegan, Illinois, arrested him for driving under the influence of alcohol. He was charged in federal court with violating § 1326(a), and nine months passed before he pleaded guilty. He did not waive, however, his rights to file pretrial motions, to appeal, or to seek postconviction relief under 28 U.S.C. § 2255. A probation officer calculated a total offense level of 21 and a criminal-history category of III, yielding an imprisonment range of 46 to 57 months. This calculation included, among other things, a 16-level increase under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Mandujano was removed from the United States after a conviction for a felony crime of violence—beating his girlfriend's 13-month-old son.

Mandujano submitted a sentencing memorandum in which he asserted that the absence of a "fast track" program in the Northern District of Illinois created an unwarranted disparity between his guidelines imprisonment range and the sentences meted out in fast-track districts. But he dedicated only one paragraph to this contention and didn't even mention the criteria that defendants in fast-track districts must meet to obtain relief, much less discuss whether he would have been eligible to participate in any of those fast-track programs. At the sentencing hearing, the district judge asked whether Mandujano would have been eligible for fast-track relief in a district that offered it. "Probably not," Mandujano's

lawyer conceded, since his client "didn't do all the things he might have had to do" to qualify. "Then how is there a disparity," the judge pressed, if Mandujano would not have received a reduction in a fast-track district? The lawyer had no answer. With that the court rejected the disparity argument and sentenced Mandujano within the guidelines range to 48 months. The court reasoned that Mandujano had not demonstrated his eligibility for fast-track sentencing and, indeed, that he probably wasn't eligible to begin with.

Our second defendant, Sergio Sandoval Ramirez, first entered the United States in 1990 and was granted permanent residency. But eight years later he was convicted in Illinois of aggravated kidnapping, so immigration officials revoked his status and removed him to Mexico. He returned to the United States unlawfully and was removed a second time in 2005. Four years later, immigration officials received a tip that Ramirez was back in the United States and had applied for an Illinois driver's license under an alias. He was charged under § 1326(a) and pleaded guilty about three months later. But he did not waive his rights to file pretrial motions, to appeal, or to seek postconviction relief under § 2255. A probation officer concluded that Ramirez's conviction for aggravated kidnapping constituted a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii) and accordingly increased his offense level by 16. Ramirez's total offense level of 21, coupled with a criminal-history category of III, resulted in a guideline imprisonment range of 46 to 57 months.

Like Mandujano, Ramirez submitted a sentencing memorandum urging the district court to reduce his sentence based on the purported disparity arising from the absence of a fast-track program in the Northern District of Illinois. But Ramirez too failed to assert that he would qualify for a reduction in a fast-track district. And at sentencing his lawyer said nothing at all about fast track. The government questioned, however, whether Ramirez even would be eligible for fast-track sentencing and insisted that, before the district court could address any supposed sentencing disparity, Ramirez first had to "show that he might qualify" for the program in a fast-track district. The court, citing precedent that we would later overturn in *Reyes-Hernandez*, concluded that it was forbidden from accepting Ramirez's fast-track argument. The court added, though, that if given discretion to accept Ramirez's argument, it still would decline to impose a lower sentence because Ramirez hadn't "demonstrated that he would be eligible for a fast-track disposition." Ramirez was sentenced within the guidelines range to 50 months.

Our final defendant, Francisco Ocampo-Pineda, was removed from the United States in 2002 after he was convicted in Illinois of aggravated criminal sexual abuse. 720 ILCS 5/12-16(d). He returned without authorization and in 2004 was removed again. Then in 2009 police in Chicago discovered Ocampo's presence when they stopped him for traffic violations. He was charged with violating § 1326(a) and pleaded guilty 10 weeks later. A probation officer increased Ocampo's offense level by 16

after concluding that his conviction under § 5/12-16(d) constituted a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii). Ocampo's total offense level of 21 and criminal-history category of II yielded a guideline imprisonment range of 41 to 51 months.

At sentencing, Ocampo principally argued that his violation of § 5/12-16(d) was not a crime of violence because, he insisted, he committed the offense merely by touching a teenager's breasts without any use or threat of physical force. The district court disagreed. For purposes of § 2L1.2(b)(1)(A)(ii), the court explained, a crime of violence includes any offense comprising "sexual abuse of a minor." *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Looking to the letter of the Illinois statute, which forbids "sexual conduct" with anyone from age 13 to age 16 by a person who is at least 5 years older, 720 ILCS 5/12-16(d), and defines "sexual conduct" to include touching the victim's genitals or breasts "for the purpose of sexual gratification or arousal," *id.* § 5/12-12(e), the court concluded that, as a matter of common sense, Ocampo's crime constituted sexual abuse of a minor.

In the alternative Ocampo argued that § 2L1.2(b)(1)(A)(ii) ought not be applied in *any* case because, in his view, the "severe" 16-level increase serves no penological purpose and is not supported by empirical evidence. Again the district court was not convinced; brushing aside Ocampo's generalized attack on § 2L1.2(b)(1)(A)(ii), the court reasoned that, in this case, a sentence within the guidelines range would appropriately reflect the seriousness of Ocampo's sexual-abuse crime and suffi-

ciently deter future § 1326(a) violations by others removed from the country after committing aggravated felonies. Ocampo's dalliance with a teenager was "an extremely egregious offense," the court elaborated, and his returning to the country after "harming the community through [his] actions and [his] violence in the past" put the public at risk and could not "be looked upon kindly."

Finally, Ocampo implored the district court to sentence him below his guideline range because of the absence of a fast-track program in the Northern District of Illinois. Lowering his prison term by the equivalent of 4 offense levels, Ocampo proposed, would "eliminate any discrepancy" between his district of conviction and the fast-track districts. This discrepancy arose, he asserted, because he "is similarly situated to defendants who receive fast track dispositions" and "almost certainly would have received a reduced sentence" if he had been picked up in a fast-track district. Ocampo pointed out that he had pleaded guilty at his first opportunity and had not filed any pretrial motions, and he attached to a sentencing memorandum a conditional waiver of his rights to file any future motions, appeal his sentence, or mount a collateral attack on his sentence. This document, which is a form waiver that the Federal Defender makes available on its website, conditions the relinquishment of rights on the defendant's receiving "a sentence commensurate with the sentences received by defendants in 'fast-track' jurisdictions." Therefore, Ocampo insisted, he "should receive the same 4 level decrease in his sentence that would be afforded an illegal reentry defendant under the fast track program." The district

court did not comment on Ocampo's fast-track argument but did sentence him to 40 months, 1 month less than the low end of his 41-to-51-months guideline imprisonment range.

## II.

To resolve these appeals, we must hammer out the details of the steps a defendant must take in order to show that a sentence within his guidelines range would create disparity with sentences imposed on similarly situated defendants in fast-track districts. Before we can address the defendants' fast-track arguments, though, we need to answer Ocampo's concerns about the calculation of his guidelines range.[1] He insists that touching a teenager's breasts does not require the use or threat of physical force; thus, he contends, his prior conviction is not a crime of violence subject to a 16-level increase under § 2L1.2(b)(1)(A)(ii). In support he cites the residual clause of Application Note 1(B)(iii), which defines

---

[1] Ramirez too makes an ancillary argument. He points out that the district court impermissibly ordered him to participate in the Inmate Financial Responsibility Program. The government concedes that this directive was plain error because sentencing courts do not have the authority to mandate participation in the program. *United States v. Munoz*, 610 F.3d 989, 997 (7th Cir. 2010). We agree and modify the judgment to clarify that Ramirez's participation is voluntary. *See United States v. Boyd*, 608 F.3d 331, 335 (7th Cir.), *cert. denied*, 131 S. Ct. 647 (2010).

the term "crime of violence" to include, in addition to 12 enumerated offenses, "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." His point, presumably, is that § 5/12-16(d) does not make the use or threatened use of force a statutory element, but this focus on what is necessary for a crime to fall within the residual clause is misguided because Application Note 1(B)(iii) explicitly enumerates "sexual abuse of a minor" as a crime of violence. And an enumerated offense *always* is a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii), whether or not the use or threat of physical force is an element of the offense. *United States v. Angiano*, 602 F.3d 828, 829 (7th Cir.), *cert. denied*, 130 S. Ct. 3434 (2010); *United States v. Vasquez-Abarca*, 334 F.3d 587, 588-89 (7th Cir. 2003).

So the question is whether aggravated criminal sexual abuse, as defined by subsection (d) of § 5/12-16, constitutes "sexual abuse of a minor." The offense proscribes any "act of sexual penetration or sexual conduct" with a victim who is at least 13 years old, is no more than 16 years old, and is at least 5 years younger than the defendant. "Both 'sexual conduct' and 'sexual penetration' describe intentional acts of a sexual nature." *People v. Kolton*, 848 N.E.2d 950, 959 (Ill. 2006). In the case of "sexual penetration," the act encompasses "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person." 720 ILCS 5/12-12(f).

As for "sexual conduct," the act includes "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, *for the purpose of sexual gratification or arousal* of the victim or the accused." *Id.* § 5/12-12(e) (emphasis added). When committed against a teenager by a person who is at least 5 years older, both acts of "sexual penetration" and acts of "sexual conduct" fall squarely within the "ordinary, contemporary, and common meaning" of the phrase "sexual abuse of a minor." *See United States v. Martinez-Carillo*, 250 F.3d 1101, 1104-05 (7th Cir. 2001). All violations of § 5/12-16(d), then, are crimes of violence for purposes of § 2L1.2(b)(1)(A)(ii), and so the district court was correct to apply the 16-level increase to Ocampo.

Ocampo also takes issue with the supposed dearth of empirical data to justify the "harsh" 16-level increase if an alien is removed after committing a crime of violence. Citing journal articles and critical opinions by district courts, he insists that the "arbitrariness" of § 2L1.2(b)(1)(A)(ii) renders his sentence unreasonable. But a district court need not even *consider* the argument "that a guideline is unworthy of application in *any* case because it was promulgated without adequate deliberation." *United States v. Aguilar-Huerta*, 576 F.3d 365, 367-68 (7th Cir.), *cert. denied sub nom. Shareef v. United States*, 130 S. Ct. 811 (2009). And the district court's thoughtful explanation of Ocampo's sentence puts to

rest any suggestion that the guideline produced an unreasonable outcome in his case. *See United States v. Moreno-Padilla*, 602 F.3d 802, 813-14 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 897 (2011).

Having resolved these preliminary matters, we turn to the question at the heart of these appeals: What evidentiary showing must a defendant make before a district court is obliged to consider his request for a lower sentence to account for the absence of a fast-track program in that judicial district? At the time these defendants were sentenced, of course, the district courts were not permitted to consider the absence of a fast-track program in crafting a sentence under 18 U.S.C. § 3553(a). *See United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 543 (7th Cir. 2006). It's now clear that, to the contrary, district judges may take into account any sentencing disparity arising from the absence of a fast-track program. *Reyes-Hernandez*, 624 F.3d at 417. But *Reyes-Hernandez* also emphasizes that, before a district court will be obligated to evaluate whether a lower sentence is warranted by the absence of a fast-track program, the defendant must first establish that he would "have been eligible for fast-track status had it been available and show that he would have in fact pursued the option." *Id.* at 420. Even before *Reyes-Hernandez* we had made the same point in *United States v. Olmeda-Garcia*, 613 F.3d 721, 724 (7th Cir. 2010), which explains that a defendant who alludes to the benefits available in fast-track districts but never tries "to demonstrate that he would be eligible" in one of those

districts cannot complain on appeal if the sentencing court ignores this argument in mitigation. *See also United States v. Arrelucea-Zamudio*, 581 F.3d 142, 156 (3d Cir. 2009) ("To justify a reasonable variance by the district court, a defendant must show at the outset that he would qualify for fast-track disposition in a fast-track district."); *United States v. Jiménez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (holding that district court need not respond to fast-track argument unless defendant provides a factual basis "for assessing the extent of the disparities"). This requirement of a foundation for a claim of fast-track disparity simply recognizes that *every* defendant who asserts that his or her personal circumstances warrant leniency is compelled to supply a factual predicate for the contention. *See, e.g., United States v. Grober*, 624 F.3d 592, 599 (3d Cir. 2010); *United States v. Felix*, 561 F.3d 1036, 1044 (9th Cir. 2009); *United States v. Quiñones-Medina*, 553 F.3d 19, 22 (1st Cir. 2009); *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009); *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008); *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008); *United States v. McGee*, 494 F.3d 551, 557-58 (6th Cir. 2007); *United States v. Acosta*, 474 F.3d 999, 1003-04 (7th Cir. 2007); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

To receive leniency in any fast-track district, a defendant must, as a starting point, promptly plead guilty, agree to a factual basis for the offense, and waive his rights to file pretrial motions, to appeal, and to seek postconviction relief under § 2255. *See* Memorandum from the U.S. Attorney General to U.S. Attorneys (Sept. 22,

2003), *available at* http://www.justice.gov/ag/readingroom/ag-092203.pdf. *See also Reyes-Hernandez*, 624 F.3d at 412; *Olmeda-Garcia*, 613 F.3d at 724. Beyond these universal requirements, however, the United States Attorneys in the judicial districts that offer fast-track sentencing have not adopted uniform eligibility criteria. The Sentencing Commission has taken the position that district courts should not reduce the sentences of defendants who participate in fast-track programs by more than the equivalent of 4 offense levels, U.S.S.G. § 5K3.1, but the guidelines do not catalogue the eligibility criteria employed in the 16 fast-track programs. A compilation of those criteria was prepared by the United States and submitted as a sentencing exhibit in *United States v. Medrano-Duran*, 386 F. Supp. 2d 943 (N.D. Ill. 2005), and that timeworn document—which may or may not still be accurate, and which does not include any information about the two newest programs—is frequently cited in distinguishing between the fast-track districts. See Fast-Track Dispositions District-by-District Relating to Illegal Reentry Cases, *reprinted in* 21 FED. SENT'G REP. 339 (2009). What the document shows is that, as of 2005, some districts did offer a reduction equivalent of 4 offense levels to all defendants who participated in a fast-track program. But other districts, like the District of Idaho, the District of Nebraska, and the Southern District of Texas, offer an eligible defendant at most a reduction of 2 levels; the Western District of Texas offers only 1 level. *Id.* at 344, 347. And still other districts employ not a departure-based program but a charge-bargain program in which the defendant pleads guilty,

typically to two counts of improper entry by an alien, 8 U.S.C. § 1325, and receives a fixed sentence in return. In most of these districts, an eligible defendant's sentence depends on whether he is subject to a 16-level increase under § 2L1.2(b)(1)(A); if so, he will receive a term of 30 months no matter what his sentencing range otherwise would have been. *Id.* at 346, 347-48. In addition to these variations in the types of programs offered, at least one district conditioned *eligibility* for its fast-track program on the defendant's criminal-history category, while most others varied the available sentence reduction according to the defendant's offense level under § 2L1.2. Whether the offense of conviction was a repeat violation of § 1326, whether the defendant was on supervised release at the time of the current offense, and the age and severity of the defendant's earlier crimes are typical factors that can affect fast-track eligibility.

We can easily dispose of Mandujano's and Ramirez's appeals because neither one made an effort to show that he met the minimum eligibility criteria for fast-track sentencing, much less that he would have qualified for one of the 16 fast-track programs. In fact, Mandujano's lawyer conceded that his client had not fulfilled the requirements that would have served as the inducement for the government's offer of fast-track relief. As for Ramirez, in his sentencing memorandum he merely speculated that he "*may* have been able to receive the benefit of a fast-track program" if sentenced in another district. He did not try to establish a factual predicate for that inconclusive guess, nor had he waived his rights

to file pretrial motions, to file a direct appeal, or to attack his conviction under § 2255. And when the government responded by casting doubt on Ramirez's eligibility for fast-track sentencing, Ramirez failed to contest that proposition, filing no written reply and remaining silent on the topic at his sentencing hearing. In short, Mandujano's and Ramirez's "disparity" arguments were illusory, and illusory arguments do not require a response from the district court.

Ocampo's appeal is trickier. For one thing, the government has confessed error and advocates a remand for resentencing in light of *Reyes-Hernandez*. But the government's confession is not binding on us, *see United States v. Cruz*, 595 F.3d 744, 745 (7th Cir.), *cert. denied*, 130 S. Ct. 3437 (2010); *United States v. Anderson*, 547 F.3d 831, 833 (7th Cir. 2008); *United States v. Demaree*, 459 F.3d 791, 793 (7th Cir. 2006), and since the threshold qualification predates *Reyes-Hernandez*, *see Olmeda-Garcia*, 613 F.3d at 724, we cannot understand the government's unwillingness to defend the outcome it sought and won from the district court. On the other hand, unlike Mandujano and Ramirez, Ocampo at least made a minimal effort to position himself like a defendant in a fast-track district. But did he go far enough? We have yet to explore exactly what a defendant needs to do to show that he is similarly situated to an eligible defendant in a fast-track district. Before argument we put that question to the parties and asked them to file supplemental statements making their best case.

As it turns out, Ocampo and the government are materially at odds. Ocampo emphasizes that he pleaded guilty

at the first opportunity after arraignment and agreed to the factual basis proffered by the government. He also touts that he attached to his sentencing memorandum a waiver of his rights to file pretrial motions, appeal his sentence, and mount a collateral attack on his conviction so long as he received "a sentence commensurate with the sentences received by defendants in 'fast-track' jurisdictions." Thus, he insists, he "did everything that he reasonably could be expected to do to establish that he was similarly situated to defendants in Fast-Track districts." As for our question how a sentencing judge should quantify a reduction in the defendant's sentence given the significant variations among the fast-track programs, Ocampo ducks the matter entirely, insisting that this court needn't bother weighing in and instead should just remand the case to let the district court decide the question in the first instance. But that is no answer to the question we posed; the very point of directing further briefing was to assist us in giving guidance to the district courts.

The government, meanwhile, maintains that the defendant must unconditionally waive his rights—and must do so at the time he pleads guilty. And the government insists that the defendant must make a "rigorous showing" not only that he *generally* is eligible for fast-track sentencing but also that "he meets all the criteria for a specific fast-track program currently employed in another district." Because it is the defendant's burden to establish an argument in mitigation, the government continues, "he cannot invoke this basis for a variance unless he can establish that defendants with comparable

criminal histories and backgrounds do in fact receive such reduced sentences in other districts." And, finally, the government proposes that the district court ought to determine the degree of the defendant's sentence reduction, if any, with reference to whatever "arguments based on both policy and facts" that the government has put forth in that particular case. Those arguments, the government suggests, could include the fact that each district's fast-track program is specifically "tailored to allow efficient prosecutions" in that district, as well as the fact that the government receives substantially less benefit from a defendant who shows only that he *would* have participated in a fast-track program had it been available.

We conclude that the government has the better response. The showing that Ocampo has proposed would not establish similarity to an eligible defendant in a fast-track district. First, Ocampo contends that it's enough to submit a waiver of his rights conditioned on receiving what he deems to be "a sentence commensurate with the sentences received by defendants in 'fast-track' jurisdictions." But that meaningless condition amounts to an unenforceable waiver; the sentencing benefits afforded defendants in fast-track districts vary widely, so even if the district court had given Ocampo a break to account for a perceived fast-track disparity, Ocampo still could argue that his conditional appeal waiver did not become operative because the sentence he received wasn't "commensurate" with sentences in fast-track districts. And then there is always the question whether a unilateral waiver that was not made as part of a

plea agreement or discussed during the plea colloquy, *see* FED. R. CRIM. P. 11(b)(1)(N), can ever be binding, *cf. United States v. Sura*, 511 F.3d 654, 661-63 (7th Cir. 2007) (holding that sentencing court plainly erred by neglecting to inform defendant during plea colloquy that his plea agreement included appeal waiver). So Ocampo's offer to relinquish his rights rings hollow. Not only that, but a defendant in a fast-track district must give up those rights immediately when he enters his guilty plea, not a couple months down the road at sentencing, like Ocampo. A defendant who wants to claim parity with an eligible defendant in a fast-track district must be prepared to accept the detriments that come with that status.

The second quarrel we have with Ocampo's response has to do with his contention that a defendant must show only that he meets the universal requirements for fast-track eligibility without regard to how the program is employed in any particular judicial district. In fact, a defendant who ignores the *additional* criteria that differ between programs by definition falls short of showing that he is similarly situated to an eligible defendant in any of the fast-track districts. And—as we hope we've driven home by now—if the defendant can't show that he actually would be eligible to receive a fast-track benefit in at least one judicial district, then his "disparity" argument is illusory.

Finally, although the government has suggested reasonable considerations for a sentencing judge to keep in mind when trying to evaluate and quantify a claim of

"disparity," we think that the government's position omits what is probably the most useful information: a thorough account of the likely benefit in each district where the defendant would be eligible for a fast-track sentence, as well as a candid assessment of the number of fast-track programs for which he would *not* be eligible. This information is important for a sentencing court to appreciate the *extent* of the disparity, if any, that would result if the defendant was not given a sentencing break. In this case, for example, Ocampo would have been eligible for a break in a few of the fast-track districts, but the 40-month term he received falls squarely within the "reduced" imprisonment range for fast-track defendants in at least 25 percent of the programs. In three of these districts—the District of Idaho, the District of Nebraska, and the Southern District of Texas—Ocampo could have received at most a 2-level decrease, which would have produced a guidelines range of 33 to 41 months; in the Western District of Texas, meanwhile, he could have received only a 1-level decrease, resulting in a range of 37 to 46 months. But we stop short of requiring Ocampo to have disclosed *this* information to the district court. Of course, the government would have been free to argue that the likely benefit in the district or districts where Ocampo was eligible would have been different from that which he suggested, or that he would not have been eligible for a reduction in other fast-track districts.

So to summarize, a defendant claiming entitlement to a lower sentence because of a perceived fast-track "disparity" must promptly plead guilty, agree to the

factual basis proffered by the government, execute an enforceable waiver of specific rights before or during the plea colloquy, establish that he would be eligible to receive a fast-track sentence in at least one district offering the program, and submit the likely imprisonment range in that district. Unless the defendant complies with each of these steps, the sentencing court will be free to reject the argument without comment. Of course, district courts have the discretion to ask both the defendant and the government for additional relevant information and such information may be made an additional prerequisite to consideration of the defendant's argument. For example, the government would likely want to produce an assessment of the number of programs for which the defendant would *not* qualify. And given these preconditions to a colorable claim of fast-track disparity, we reject the government's confession of error in Ocampo's appeal. The confession is difficult to reconcile with *Reyes-Hernandez* and *Olmeda-Garcia*—and harder still to reconcile with the government's supplemental statement, which persuasively proposes that a defendant can show he is similarly situated to an eligible defendant in a fast-track district only by offering an enforceable waiver of his rights at the time he pleads guilty and establishing that he would be eligible for a fast-track benefit in at least one other district that offers such a program. Ocampo did neither. And for that reason the district court did not commit error by saying nothing in response to his illusory fast-track argument. *See Reyes-Hernandez*, 624 F.3d at 420; *Olmeda-Garcia*, 613 F.3d at 724; *Arrelucea-Zamudio*, 581 F.3d at 156-57.

This conclusion is not altered by the fact that *Reyes-Hernandez* was decided after Ocampo was sentenced. *Reyes-Hernandez* was argued in November 2009, four months before Ocampo filed his sentencing memorandum and seven months before he was sentenced. Indeed, Ocampo anticipated the winning argument in *Reyes-Hernandez* when he urged the district court to abandon our decisions in *Galicia-Cardenas* and *Martinez-Martinez* in light of the Supreme Court's holding in *Kimbrough v. United States*, 552 U.S. 85 (2007). In support he cited the Third Circuit's decision in *Arrelucea-Zamudio*, which, like *Reyes-Hernandez*, requires a defendant to show that he would be eligible for a benefit in a fast-track district before he can expect a sentencing court to respond to his disparity argument. 581 F.3d at 156-57. And his submission of a form waiver of his rights from the Federal Defender's website shows he knew he needed to establish that he actually would have been eligible for fast-track sentencing. A defendant who urged the district court to adopt the reasoning that eventually prevailed in *Reyes-Hernandez* doesn't deserve a "do-over" just because he neglected to follow through on his own argument. *Vazquez-Pita*, 411 F. App'x at 891; *Morant-Jones*, 411 F. App'x at 887; *Abasta-Ruiz*, 409 F. App'x at 950. Ocampo wasn't caught off guard by this threshold qualification; it's just that his attempt to carry his burden fell far short.

Having said what we have said, we recognize that establishing that a defendant in this circuit would have received a fast-track benefit in a district that offers one can be a little complicated. We commend Ocampo's lawyer for taking several positive steps, with an assist

from the Federal Defender's helpful website, toward establishing his client's eligibility for the program. To cut through all the muss and fuss in future cases, we have provided several sources of information regarding fast-track policies.[2] We further urge the U.S. Attorneys' offices in this circuit to work with defendants seeking fast-track consideration and to willingly stipulate to sentencing judges that defendants are eligible if that appears to be the case.

To wrap up, we conclude that the fast-track arguments made by all three of these defendants were illusory and could be passed over in silence. Accordingly, we AFFIRM each of their sentences; Ramirez's sentence, however, is

---

[2] Defendants may use a variety of sources to obtain the necessary information. Of course, defendants may first look to publicly available plea agreements. There are several memoranda discussing fast-track district programs. *See* 21 FED. SENT'G REP. 339 (2009); Memorandum from the Deputy Attorney General to U.S. Attorneys (Dec. 28, 2009), available at http://www.fd.org/pdf_lib/Fast%20Track%20Ogden%20memo%2012.28.09.pdf (last visited Dec. 14, 2011). Articles also discuss district programs' requirements. *See, e.g.*, Ingrid V. Eagly, *Prosecuting Immigration*, 104 NW. U. L. REV. 1281, 1322 n.251 & 254 (2010) (citing interviews with Federal Defender in District of New Mexico and "Panel Representative" in the Southern District of California); James F. Smith, *United States Immigration Law as We Know It: El Clandestino, the American Gulag, Rounding Up the Usual Suspects*, 38 U.C. DAVIS L. REV. 747, 785 n.167 (2005) (citing interview with Federal Defender in the Northern District of California).

MODIFIED to clarify that his participation in the Inmate Financial Responsibility Program is voluntary.