NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2012
Decided November 8, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-1123

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 10 CR 591 |
| SAUL ROMAN-CASTENON, | Ronald A. Guzman, |
| *Defendant-Appellant.* | *Judge.* |

**O R D E R**

Saul Roman-Castenon pleaded guilty to entering the United States without authorization after having been removed, 8 U.S.C. § 1326(a), and was sentenced to 46 months' imprisonment. He appeals, arguing that the district court should have shortened his sentence based on (1) the absence of a "fast track" program in the judicial district and (2) perceived flaws in the guideline increase of 12 levels for defendants who violate § 1326(a) after a conviction for an aggravated felony. Because the district court was not obliged to accept either of these grounds in mitigation, and Roman-Castenon has not

identified any error in the court's refusal to embrace them, we affirm the judgment of the district court.

Roman-Castenon tried to enter the United States in June 2010 at O'Hare International Airport. He was detained because the name on his United States passport, Edward Baldenegro, was flagged in a database as linked to a false claim of citizenship. A fingerprint check revealed Roman-Castenon's true identity. He was formally charged in August 2010 with violating § 1326(a) but did not sign a plea agreement with the government for another nine months.

Before this incident Roman-Castenon had not been charged under § 1326(a), but he did have a long history of unauthorized entries into the United States. He was first removed from the country in 1979 after entering without permission in 1975. He soon returned, and in 1982 he was convicted in Illinois of "indecent liberty with a child" after he forcibly penetrated (and apparently infected with gonorrhea) a 5-year-old girl. He was sentenced to 4 years' imprisonment, served 15 months, and was again deported in May 1983. Within nine months Roman-Castenon had returned to the United States and been convicted in California of committing a lewd or lascivious act with a 10-year-old girl. In September 1986, after serving 2 years of a 6-year sentence, he again was deported. Undeterred, he returned to Illinois and incurred new convictions for driving under the influence, driving without a license, operating an uninsured vehicle, and obstruction of justice. The last of these crimes netted Roman-Castenon an 18-month sentence, and when that term expired in June 2001 he was removed again. By then, however, Roman-Castenon had applied successfully for his "Edward Baldenegro" passport, which, before his arrest in this case, he had used 13 times to enter the United States illegally.

Roman-Castenon was sentenced in December 2011. A probation officer using the November 2010 edition of the sentencing guidelines initially had assessed his base offense level at 8, *see* U.S.S.G. § 2L1.2(a) (2010); added 16 levels because he was deported after the indecent-liberty conviction (which qualified as a crime of violence), *see id*. § 2L1.2(b)(1)(A)(ii), cmt. n.1(B)(iii); and subtracted 3 levels for acceptance of responsibility, *see id*. § 3E1.1. This calculation was revised in light of an amendment, effective November 1, 2011, which revised § 2L1.2(b)(1)(A) to lower the increase for a crime of violence from 16 levels to 12 if the conviction is too old to generate criminal-history points (as was true for Roman-Castenon's indecent-liberty conviction). The resulting total offense level of 17 and criminal history category of IV yielded a guidelines imprisonment range of 37 to 46 months. In a sentencing memorandum, defense counsel (who no longer represents Roman-Castenon) stated that the defendant agreed with the probation officer's guidelines calculations, which counsel erroneously characterized as yielding a range of only 24 to 30 months. Because the Northern District of Illinois did not have a "fast track" program at that

time, Roman-Castenon argued that the district court should impose a below-guidelines sentence to avoid "unwarranted sentencing disparities." He did not assert, however, that he would be eligible for a fast-track reduction in any district with a program. Nor did counsel make any effort to address this circuit's criteria for establishing a nonfrivolous claim of fast-track disparity. *See United States v. Ramirez*, 675 F.3d 634, 636 (7th Cir. 2011), *amending* 652 F.3d 751 (7th Cir. 2011). Apart from his fast-track argument, Roman-Castenon also asked for leniency on the grounds that he is actually innocent of the indecent-liberty offense and that violent crime in Mexico had prompted his return to the United States.

The district court adopted the probation officer's guidelines calculations and sentenced Roman-Castenon to 46 months' imprisonment. The court rejected his fast-track argument, noting that Roman-Castenon had not established that he would qualify for fast-track sentencing in any district where it was available. And even if he was eligible in another district, the court explained, Roman-Castenon's case was not one "in which the fast track consideration is particularly important" given his serious prior criminal conduct, multiple illegal reentries, and use of a fraudulently obtained passport. In light of these considerations, the court concluded that a sentence at the high end of the guidelines range was appropriate.

On appeal, Roman-Castenon first argues that the district court failed to give "thoughtful analysis" to his fast-track argument before declining to impose a reduced sentence on that ground. He suggests that, had the court engaged in "thoughtful analysis," it would have analyzed the elements of the fast-track program for the Northern District of Illinois (which did not yet exist when he was sentenced) and would have given him a lower sentence.

This argument fails on several fronts. First, the district court need not have considered the fast-track claim at all because Roman-Castenon had not satisfied the basic requirements of fast-track sentencing or established—indeed, even asserted—that he was eligible for fast-track sentencing in any district where it was then available. *See Ramirez*, 675 F.3d at 636; *United States v. Lua-Guizar*, 656 F.3d 563, 568–69 (7th Cir. 2011); *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1062 (7th Cir. 2011); *United States v. Reyes-Hernandez*, 624 F.3d 405, 420 (7th Cir. 2010). Six months before Roman-Castenon was sentenced, we had made clear that a defendant's claim of fast-track disparity "is illusory and may be passed over in silence" unless he shows that he is "similarly situated to persons who actually would receive a benefit in a fast-track district." *Ramirez*, 652 F.3d at 753–54. To satisfy that standard, we continued, a defendant must (1) plead guilty promptly, (2) agree to the government's proposed factual basis, (3) execute an "enforceable waiver" of his rights to file pretrial motions, to appeal, and to seek postconviction relief, and (4) "establish that he would receive a fast-track sentence in at least one district offering the program. *Id.* (The

original, July 2011 version of *Ramirez* included an additional requirement that the defendant provide the district court with a "thorough account of the likely imprisonment range in the districts where he is eligible, as well as a candid assessment of the number of programs for which he would not qualify." *Id.* at 754. This last requirement was omitted from the opinion on denial of rehearing en banc in March 2012, *see Ramirez*, 675 F.3d at 644, but the remaining requisites for establishing fast-track disparity are the same in the original and amended versions of *Ramirez* and thus could not have been a surprise to Roman-Castenon when he was sentenced in December 2011.) Roman-Castenon met none of the *Ramirez* elements except for agreeing to a factual basis, and although the government discussed *Ramirez* extensively in reply to the fast-track claim in Roman-Castenon's sentencing memorandum, he did not front the decision in his opening brief to this court or file a reply brief addressing the government's continued reliance on that case. The *Ramirez* decision makes Roman-Castenon's fast-track claim frivolous: The judge was not required to mention the claim at all, and so it cannot be that the judge said too little in rejecting it.

Moreover, Roman-Castenon's suggestion that he would qualify for fast-track sentencing under the Northern District of Illinois's current program is disingenuous. First, Roman-Castenon did not waive his right to appeal his sentence or collaterally attack his conviction, both of which are requirements for participation in the program. The Northern District's program also provides that the U.S. Attorney may refuse to offer fast-track sentencing to illegal-reentry defendants who, like Roman-Castenon, have been removed four or more times. (Roman-Castenon ignores one of his four removals, apparently because it was accomplished without the need for yet another order of removal, but removal on the authority of an existing order still counts as removal, *see United States v. Diaz-Luevano*, 494 F.3d 1159, 1161–62 (9th Cir. 2007).) And finally, although Roman-Castenon suggests that his sex offenses committed against children are not "crimes of violence" that would render him ineligible under the Northern District's program, a January 2012 memorandum from the Department of Justice provides that the U.S. Attorney retains discretion to deny fast-track participation based on "prior violent felony convictions . . . including . . . child-sex offenses." We have previously used § 2L1.2(b)(1)(A) to evaluate whether defendants would be eligible in districts that deny fast-track sentencing to defendants with convictions for violent crimes, *see United States v. Abasta-Ruiz*, 409 F. App'x 949, 951 (7th Cir. 2011), and the commentary to this guideline explicitly identifies "sexual abuse of a minor" as a crime of violence. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); *see also Ramirez*, 652 F.3d at 756; *United States v. Vargas-Garnica*, 332 F.3d 471, 474 (7th Cir. 2003).

In addition to his fast-track claim, Roman Castenon also argues that he should have received a lower sentence on the ground that the 12-level increase he received under § 2L1.2(b)(1)(A)(ii) was unwarranted. (Appellate counsel says that the increase was 16 levels, not 12, but counsel is mistaken.) According to Roman-Castenon, subsection (b)(1) is

flawed because the Sentencing Commission purportedly abandoned its "'institutional role' in utilizing empirical data, national experience, or input from a range of experts in the field." The government understands Roman-Castenon to be making an argument based on 18 U.S.C. § 3553(a), not a misapplication claim. We agree with that view.

This theme has been repeated time and again in § 1326(a) prosecutions. *See, e.g., Ramirez*, 675 F.3d at 640; *United States v. Moreno-Padilla*, 602 F.3d 802, 814 (7th Cir. 2010); *United States v. Lemus-Rodriguez*, 375 F. App'x 616, 617 (7th Cir. 2010). Roman-Castenon concedes, however, that he did not argue at sentencing that subsection (b)(1)(A) is empirically unsound, so the district court could not have committed error by not mentioning this purported ground in mitigation. *See United States v. Huffstatler*, 571 F.3d 620, 622–24 (7th Cir. 2009); *United States v. Teuschler*, 689 F.3d 397, 400 (5th Cir. 2012); *United States v. Regan*, 627 F.3d 1348, 1354 (10th Cir. 2010). A sentencing court must address nonfrivolous arguments in mitigation, *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012); *United States v. Pulley*, 601 F.3d 660, 667 (7th Cir. 2010), but no decision requires a sentencing court to anticipate and analyze discretionary grounds in mitigation which the defendant doesn't make himself. And though Roman-Castenon maintains that he did enough by speaking generally of the harshness of subsection (b)(1)(A), his statements did not apprise the district court that he disagreed with the policy judgments embodied by that guideline. All he said at sentencing was that "a guideline range of 24–30 months [sic] is unwarranted"—an assertion he backed with a single citation to a 2005 opinion from a district court characterizing an increase under § 2L1.2(b) as disproportionate to the defendant's dangerousness, *see United States v. Galvez-Barrios*, 355 F. Supp. 2d 958, 962–63 (E.D. Wis. 2005). That mention comes nowhere close to an argument that the Sentencing Commission's supposed abandonment of its "institutional role" warranted a reduced sentence under § 3553(a).

In any case, a defendant's contention that a guideline was promulgated without adequate deliberation is a stock argument on which a district court need not comment at sentencing. *See Ramirez*, 675 F.3d at 640; *United States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009). Moreover, Roman-Castenon was sentenced under the new version of § 2L1.2, which the Sentencing Commission promulgated in response to comments and case law critical of the guideline's failure to distinguish stale convictions from those recently committed. *See* Sentencing Guidelines for United States Courts, 76 Fed. Reg. 3193, 3194, 3207 (Jan. 19, 2011). This development, we note, undercuts Roman-Castenon's claim that the guideline is not informed by expert input.

AFFIRMED.