**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 26, 2011
Decided February 18, 2011

*Before*

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 10-2429

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 09 CR 793-1 |
| GUILLERMO VAZQUEZ-PITA, *Defendant-Appellant.* | Rebecca R. Pallmeyer, *Judge* |

**O R D E R**

Guillermo Vazquez-Pita, a Mexican citizen, pleaded guilty to unlawful presence after removal, 8 U.S.C. § 1326(a), and argued for a below-guidelines sentence on several grounds, including the absence of a "fast track" program in the Northern District of Illinois. The district court accepted one of his arguments in mitigation, though not the fast-track contention, and sentenced Vazquez-Pita below the guidelines range to 68 months. On appeal he principally claims that the court failed to evaluate his fast-track argument. The government confesses error on this claim, but we conclude that the court fully addressed Vazquez-Pita's sentencing arguments and committed no error.

Vazquez-Pita was 6 when his parents lawfully entered the United States with their children in 1973. He has lived here ever since. Between 1986, when he was 18, and 2009, he

incurred 7 convictions for drug offenses, 6 of them felonies. Two other prosecutions ended with acquittals, and 12 more arrests were not adjudicated. He was removed to Mexico for the first time in December 2005, but a few months later he was arrested in Chicago for a drug crime. He was removed again in May 2008, and by March 2009 he was back in Chicago where again he was arrested for a drug crime. This time he was charged in federal court with violating § 1326(a). The district court calculated a guidelines imprisonment range of 77 to 96 months based on his criminal history category of VI and total offense level of 21. The offense level included a 16-point upward adjustment because Vazquez-Pita had been convicted of a drug trafficking crime before he was removed. *See* U.S.S.G. § 2L1.2(b)(1)(A). He did not object to these calculations.

At his sentencing in June 2010, Vazquez-Pita argued for a 36-month prison sentence, which he described as comparable to his likely sentence in a judicial district with a fast-track program. He did nothing to establish, however, that he would have satisfied the eligibility criteria for fast-track sentencing in any of the 16 judicial districts with a program. His lawyer devoted less than 2 pages of a 22-page sentencing memorandum to the topic of fast-track disparity, and mentioned the subject only briefly at the sentencing hearing. That hearing was 6½ months after the oral argument in *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2010), which overturned decisions foreclosing sentencing judges from basing a below-range sentence solely on the absence of a fast-track program in the prosecuting district, *id*. at 417; *see United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 543 (7th Cir. 2006).

Vazquez-Pita also identified other grounds in mitigation. He pressed for leniency because, as he viewed the circumstances, his § 1326(a) violation was indirectly the fault of immigration authorities. He had applied for citizenship in 1996 after marrying a United States citizen (the couple now have four children), but, according to Vazquez-Pita, his application was denied because he missed a personal interview that no one had told him about. If not for that foul-up, he insisted, he would have become a citizen and would not have been removed from the United States. The prosecutor countered with evidence that Vazquez-Pita's criminal history would have ruined his prospects for citizenship even had he attended the interview.

In addition, Vazquez-Pita advocated for a reduced sentence because he provided information to the sheriff's office while detained in the Cook County jail. He also asserted that his criminal history score was exaggerated because, he said, his felony convictions are mostly for "simple drug possession" and do not evidence a "history of drug dealing." (In fact, Vazquez-Pita has felony convictions for distributing cocaine and possessing marijuana with intent to distribute, and one of his "simple possession" cases involved the seizure of $3,100 in currency and small quantities of heroin and cocaine.) Leniency also was

warranted, Vazquez-Pita continued, because the 16-level upward adjustment in § 2L1.2(b)(1)(A) lacks empirical support. And finally, he argued, he should receive the benefit of proposed (and later adopted) Application Note 8 to § 2L1.2, which recognizes that sometimes a lower sentence "may be appropriate on the basis of cultural assimilation."

The district court, in addressing the appropriate sentence, offered a lengthy explanation for choosing 68 months:

> I think, given the age of some of the offense conduct, I am prepared to conclude that Mr. Vazquez-Pita's criminal history is, at least to some degree, overstated.

> But I would observe in drawing that conclusion that the illegal reentries aren't technically counted in exactly the same way themselves.

> I would note as well that there were more than a dozen arrests on other occasions. Now, of course, if you are not convicted, those don't count against you as criminal history points. But it's hard for me to believe that every one of those times was a case of mistaken identity or being picked up for something you didn't do.

> The fact is that, apart from the time that you have been outside the United States, you have been involved in a lot of criminal activity while you are here. And it's that reason that I suspect would preclude you from being sworn in as a citizen at any point.

> What I am looking at now is, what is the appropriate sentence?

> [Defense counsel] is correct that there is at least a valid argument to be made that the 16-point enhancement that's added here was imposed by the Sentencing Commission without the kind of studies that we would ordinarily expect or want. I am not inclined to conclude that because Mr. Vazquez-Pita might be eligible for some lesser sentence in a fast-track district that this Court should impose one, however.

> So I think he does require a substantial sentence, albeit one that's lower than what the advisory guideline would otherwise call for.

> . . . .

I am going to impose a sentence of 68 months in custody. This is to reflect not only the seriousness of the offense and the repeated nature of Mr. Vazquez's conduct but also to acknowledge that at least some of the criminal history is a function of his having been an addict as opposed to his engaging in any violent offenses.

Mr. Vazquez-Pita, I think serving a significant-length sentence in custody is harsh enough, but as you know, the next step in your life is to be removed from the United State. And for somebody who has been in the United States since he was five years old, I think that sentence is extremely harsh indeed.

In fact, it would move me to impose an even lower sentence than I have already, but I am concerned because your repeated returns to the United States and the fact that your life is really here makes it so likely to me that you are going to be tempted to return once again. And that just can't happen.

As unpleasant as it is, you really do need to face up to the fact that your future lies outside the borders of the United States. You are going to have to make a life for yourself in another country and not come back here without the express written permission of the Department of Homeland Security.

In a written statement of reasons, the court added that a "significant sentence is warranted" whether or not § 2L1.2(b)(1)(A) is supported by empirical data. And the sentence imposed, the court continued, "is not greater than necessary."

On appeal Vazquez-Pita principally argues that the district court failed to consider whether a shorter prison sentence was warranted by the absence of a fast-track program in the district. He also contends that the court should have disregarded § 2L1.2(b)(1)(A) because that 16-level upward adjustment lacks empirical support and, in his view, yields sentences which are "far greater than necessary" to achieve the goals of 18 U.S.C. § 3553(a). Vazquez-Pita further asserts that the judge improperly considered arrests that did not lead to convictions, and gave him more—instead of less—prison time because of his cultural assimilation. We address these arguments in turn, beginning with the fast-track claim.

Fast-track sentencing requires that defendants waive significant rights in exchange for leniency, including the rights to file pretrial motions, to appeal, and to collaterally challenge a conviction under 28 U.S.C. § 2255. *See* John Ashcroft, *Mem. from Att'y Gen. John Ashcroft Setting Forth Justice Dep't's "Fast-Track" Policies*, 16 FED. SENTENCING REP. 134, 135

(2003).  After *Reyes-Hernandez*, 624 F.3d at 422, sentencing judges possess recognized discretion to weigh the absence of a fast-track program in analyzing the § 3553(a) factors. But that opinion does not require a reduced sentence.  *Id*. at 421.

Vazquez-Pita maintains that the district court never considered his fast-track argument, but the sentencing transcript belies that view.  On the other hand, the government acknowledges that the judge evaluated the argument but asserts that she rejected it without giving a clear explanation.  This view, too, is rebutted by the transcript, and though we give deference to the government's position, we are not required to accept it. *See United States v. Demaree*, 459 F.3d 719, 793 (7th Cir. 2006); *United States v. Locklear*, 97 F.3d 196, 198 (7th Cir. 1996).  Rather, even when the government confesses error, we must make an independent assessment.  *United States v. Wilson*, 237 F.3d 827, 833 (7th Cir. 2001); *Griffin v. United States*, 109 F.3d 1217, 1219 (7th Cir. 1997).

The district judge said nothing suggesting that she was unable or unwilling to consider the fast-track argument, and it makes little sense to interpret her statements in that manner.  As we have noted, *Reyes-Hernandez* (another case from the Northern District of Illinois) had been argued and was under advisement when Vazquez-Pita was sentenced. And, indeed, a month before *Reyes-Hernandez* was argued, this same district judge had rejected a fast-track argument in another § 1326(a) prosecution, not because she thought leniency was beyond her discretion to grant, but because she was not convinced that a reduction based the asserted fast-track disparity was warranted in the particular case. *See United States v. Torres-Vasquez*, No. 09-3641, 2010 WL 472354 (7th Cir. Nov. 22, 2010) (nonprecedential decision).  We cannot envision why the district court would have exercised discretion previously and then refused to do so in sentencing Vazquez-Pita.

The district judge said she was not "inclined to conclude" that Vazquez-Pita ought to get a lower sentence simply because he "might be eligible for some lesser sentence in a fast-track district."  The judge's statement conveys that she was not *persuaded* by the argument, not that she refused even to consider it.  The judge proceeded as she did in *Torres-Vasquez*: she acknowledged the argument but rejected it as unpersuasive, and when her explanation is read in context, it is clear that the judge did all that we require.  *See Reyes-Hernandez*, 624 F.3d at 420.  What the judge deemed most significant was Vazquez-Pita's prior convictions and his repeated unlawful entries, and her written statement of reasons issued after the sentencing confirms that the judge resolved that a sentence of 68 months was necessary to dissuade Vazquez-Pita from violating § 1326(a) yet again when he is release from prison and removed for a third time.

In addition, our analysis in *Reyes-Hernandez* starts with the proposition that a defendant advocating a reduced sentence because of fast-track disparity must initially

establish, as a factual predicate, that he would "have been eligible for fast-track status had it been available" and would have pursued the option.  624 F.3d at 420; *see United States v. Olmeda-Garcia*, 613 F.3d 721, 724 (7th Cir. 2010).  Absent that groundwork, the "disparity" argument is illusory.  Yet Vazquez-Pita did not claim that he tried to resolve his prosecution with dispatch and under terms that would have made him eligible for fast-track status in a district with a program.  Nor did he measure his own circumstances—his criminal history and number of removals, for example—against the fast-track criteria in districts with programs.  Instead, he expected the court to *assume* that he would have gotten fast-track status wherever a program exists, but as we explained in *Olmeda-Garcia*, 613 F.3d at 724, a district judge is not even compelled to respond to such undeveloped arguments.

We thus reject the fast-track claim, and Vazquez-Pita's remaining contentions require only brief discussion.  He argues that the district court should have bypassed the 16-level increase in § 2L1.2(b)(1)(A), which he characterizes as a "knee-jerk reaction" to immigration crimes.  As a general matter, he insists, the guideline is "arbitrary and invalid" because it lacks empirical support.  But district courts are never free to *miscalculate* the guidelines range; the judge must correctly calculate the guidelines range—using the guidelines as written—and then, as a matter of discretion, may deviate from that range based on myriad factors, including disagreement with a particular guideline.  *See United States v. Shamah*, 624 F.3d 449, 457 (7th Cir. 2010); *United States v. Nelson*, 491 F.3d 344, 347 (7th Cir. 2007).  Sentencing judges are not required, though, to delve into a guideline's drafting history to satisfy themselves that the process yielded a good result.  *United States v. Moreno-Padilla*, 602 F.3d 802, 814 (7th Cir. 2010); *United States v. Aguilar-Huerta*, 576 F.3d 365, 367-68 (7th Cir. 2009).  As we said in *Aguilar-Huerta*, judges need not entertain arguments "that a guideline is unworthy of application in *any* case because it was promulgated without adequate deliberation," 576 F.3d at 367-68, and that is all Vazquez-Pita really says here: § 2L1.2(b)(1)(A) should be discounted in every case without exception.  The district court acknowledged this contention, but even that step was unnecessary.

We also reject Vazquez-Pita's contention that the district court improperly considered unadjudicated arrests in fashioning his sentence.  Criminal conduct not resulting in conviction is relevant if the sentencing court finds by a preponderance that the conduct occurred, *United States v. Johnson*, 427 F3d 423, 428-29 (7th Cir. 2005), but an arrest, standing alone, should not be considered, *United States v. Walker*, 98 F.3d 944, 948 (7th Cir. 1996); *United States v. Williams*, 910 F.2d 1574, 1579-80 (7th Cir. 1990).  The defendant bears the burden of establishing reliance on improper information, *United States v. Turner*, 604 F.3d 381, 385 (7th Cir. 2010); *United States v. Salinas*, 365 F.3d 582, 587-88 (7th Cir. 2004), and Vazquez-Pita has not carried that burden.  While in passing the district court alluded to his "dozen arrests," the court did not say anything suggesting that his arrest record played a material part in the sentencing analysis.  To the contrary, the court sympathized with

Vazquez-Pita's alleged drug addiction and concluded that his criminal history was overstated. We are unpersuaded, therefore, by his speculation that his sentence would have been further reduced if the district court had not mentioned his arrest record.

And, finally, there is no merit to Vazquez-Pita's contention that the district court improperly cited his cultural assimilation to increase his sentence. Vazquez-Pita had urged the court to rely on Application Note 8 to § 2L1.2, which envisions that a reduced sentence might be appropriate in some instances where cultural assimilation was the primary motivation for a violation of § 1326(a). According to Vazquez-Pita, the district court had signaled a willingness to go further below the range but declined out of concern that he would be tempted to reenter the United States because his "life is really here." This new application note did not take effect until after Vazquez-Pita had been sentenced, and, regardless, it would not have benefitted him because the provision rejects leniency that is "likely to increase the risk to the public from further crimes of the defendant." *See* U.S.S.G. § 2L1.2 cmt. n.2. That was the district court's concern: too short of a sentence would not encourage Vazquez-Pita to "face up to the fact" that his "future lies outside the borders of the United States." At all events, the district court did not *increase* his prison sentence based on cultural assimilation; at most, the court did not further *decrease* the term based on his upbringing in the United States. Morever, Vazquez-Pita cites no authority for his assumption that cultural assimilation cannot be a ground for increasing a sentence. A defendant cannot cabin the sentencing court's discretion or limit its exercise to favorable rulings, and what a defendant proposes as an argument in mitigation may sound to the court more like a factor in aggravation. That risk is inherent in discretionary sentencing. *See United States v. Jackson*, 547 F.3d 786, 794-95 (7th Cir. 2008); *United States v. Blue*, 453 F.3d 948, 952-55 (7th Cir. 2006).

Accordingly, we reject Vazquez-Pita's challenges to his below-range sentence and AFFIRM the judgment of the district court.