In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2484

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OLLIE PETERSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 CR 517—**James B. Zagel**, *Judge.*

ARGUED FEBRUARY 27, 2013—DECIDED MARCH 28, 2013

Before FLAUM, SYKES, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Defendant Ollie Peterson pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) after robbing a bank to pay off a debt with a drug dealer. During Peterson's sentencing hearing, the district court read from a portion of the probation officer's confidential sentencing recommendation, which she had submitted only to the court. At the conclusion of the hearing, the district court sen-

tenced Peterson to 168 months in prison, which fell within Peterson's sentencing guidelines range. On appeal, Peterson argues that the district court's reliance on the probation officer's confidential sentencing recommendation violated his Fifth and Sixth Amendment rights because he had no opportunity to respond to the analysis contained therein. Having determined that Peterson received and had the opportunity to comment on all facts supporting the probation officer's analysis and that Peterson's counsel presented a comprehensive sentencing argument on the basis of those facts, we affirm.

## I. Background

On August 1, 2011, Peterson robbed a TCF Bank located in a Jewel-Osco supermarket in Waukegan, Illinois to pay a drug dealer for drugs he had already ingested. Peterson left the bank with $1,525 in cash and used part of the money to pay the dealer who had been waiting for him nearby in the supermarket. Officers apprehended Peterson the same day and a grand jury later issued an indictment charging him with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Peterson pled guilty to the offense on January 6, 2012.

Prior to sentencing, the parties received a Presentence Investigation Report ("PSR") prepared by the probation officer assigned to the case. Because Peterson had seven prior convictions for aggravated robbery, the probation officer determined he was a career offender with a criminal history category of VI. Together with the applicable offense level, the PSR specified Peterson's guide-

lines range for sentencing as 151 to 188 months' imprisonment.

The probation officer also described Peterson's personal and family history. According to the PSR, Peterson's mother raised him in a middle class neighborhood on the south side of Chicago. Peterson's father died when he was nine years old and his mother remarried a man Peterson labeled a "functioning alcoholic." Peterson's mother described her son as an obedient child, expressed her unyielding love and support for him, and noted that he would always be welcome to return to her home. Peterson did, however, struggle with substance abuse. After experimenting with alcohol and marijuana as a teenager, he began using cocaine when he was 30 years old. His mother indicated that no one in their family had known that Peterson was abusing cocaine and alcohol until he was first convicted of robbery, and she expressed her belief that Peterson's drug use caused his criminal behavior.

At Peterson's sentencing hearing on May 25, 2012, the district court asked whether Peterson and his attorney had read and reviewed the PSR. Defense counsel acknowledged that they had and asked that two minor corrections be made to its contents. The district court accepted the changes and then turned to the attorneys for argument.

During its presentation, the defense highlighted that Peterson had sustained periods of sobriety, law-abidingness, and productivity followed by relapses of substance abuse and criminal conduct. Defense counsel conceded that Peterson had seven prior robbery convic-

tions, but explained his new motivation to change, as reflected by his age and his attempt to enter into a drug treatment program.

The government focused on Peterson's criminal history, and argued that his prior prison sentences had not deterred him from committing additional crimes. Given Peterson's guidelines range of 151 to 188 months' imprisonment, the government suggested that a sentence within the guidelines would be sufficient to protect the public and provide Peterson with drug treatment and other services needed for rehabilitation.

Following the arguments and Peterson's brief allocution, the district court addressed the parties. During its explanation prior to the imposition of the sentence, the district court recited a portion of the probation officer's report, which the court described as an "observation" that it believed to be "quite right." The district court quoted from page 23 of the PSR,

> [I]n imposing a sentence, the Court must also consider the defendant's personal history and characteristics. What is extraordinarily troublesome in this regard is the defendant Peterson's history is quite different than the typical career offender. He was reared in a loving home, albeit without a father, in a middle-class neighborhood. According to his mother, the defendant was a compliant child throughout high school, he was active on the football team. Aside from the relatively common experimentation with alcohol and marijuana, the defendant refrained from harsher drug use until

his late 20's. On the one hand, the first half of the defendant's life was positive, and this could be viewed as a mitigating factor.

After concluding the quote, the judge explained that based on his reading of many PSRs,

this is not a typical background that defendants with this criminal history have. Usually badly broken homes, abusive parents, families that don't care, none of which is true in his case. The problem is . . . that I'm not sure if that's a mitigating factor or an aggravating factor. And the reason it can be an aggravating factor is, many defendants who come before me whose early life was deeply troubled are claiming that as a mitigating factor, and they have a point. Badly raised in bad places does explain bad conduct in many cases, or at least give some kind of hint as to why it happened.

The judge continued that Peterson had displayed a recurring pattern of being unable to resist drug use to stay out of prison and noted that he had not learned from his past experiences. He then concluded that Peterson would be unlikely to break his cycle of periodic relapse and recidivism until he was much older and imposed a sentence of 168 months' imprisonment. After announcing the sentence, the judge asked counsel whether there was "anything further," to which defense counsel responded with a question about restitution. After the court answered that question, it asked again whether the parties had anything more to address. The attorney for the government responded, "No, Your Honor," and the court went into recess.

The passage the district court quoted from the PSR during the sentencing hearing appeared in the probation officer's confidential sentencing recommendation that she submitted only to the court. Neither party viewed the confidential recommendation prior to, during, or after the sentencing hearing. And defense counsel was evidently unaware that a probation officer's confidential sentencing recommendation includes a written justification for the recommended sentence.

Peterson filed a timely notice of appeal on June 22, 2012, and on August 3, 2012, he filed a motion with the district court to disclose to the parties the version of the PSR containing the probation officer's confidential recommendation. Peterson stated that the only non-frivolous issue for appeal related to the district court's reliance on the recommendation, noting that it could have violated Peterson's right to due process because he had no opportunity to respond to the arguments contained therein.

On September 14, 2012, Peterson filed a supplemental memorandum in support of his motion, arguing that if he had been permitted access to the confidential recommendation, counsel could have properly addressed the district court's concerns at sentencing. Peterson explained that on appeal he would be challenging the recommended sentence, the probation officer's analysis contained in the confidential recommendation, and the lack of opportunity to comment on the probation officer's reasoning. The government responded to the motion, arguing that the precedent in this circuit has

established that confidential recommendations and the local rule that permits confidential recommendations do not violate a defendant's right to due process.

Ultimately, the district court denied the motion, explaining that confidential sentencing recommendations are constitutional and that releasing the confidential report could influence the candidness of a probation officer's recommendation. In so holding, the district court emphasized that the parties had received all of the factual information supporting the probation officer's analysis about Peterson's upbringing and criminal history and explained that it had "quoted the relevant passage in full so that defense counsel could raise questions before [the court] imposed [Peterson's] sentence." The district court pointed out that defense counsel made no objection or suggestion that the quoted passage contained anything more than an opinion drawn from facts that had been fully revealed in the PSR.

## II. Discussion

Peterson's sole contention on appeal is that the district court's reliance on the probation officer's confidential sentencing recommendation violated his Fifth and Sixth Amendment rights. He maintains he had no meaningful opportunity to respond to what he viewed as an argument in aggravation made secretly to the district court.

**A. Standard of Review**

Generally, the standard of review for constitutional errors is de novo. *United States v. Farris*, 448 F.3d 965, 967-68 (7th Cir. 2006). But here, the government contends Peterson forfeited his constitutional arguments by not objecting to the district court's consideration of the confidential recommendation. In response, Peterson asserts he had no opportunity to object because he did not learn of the analysis contained in the confidential portion of the PSR until the district court's explanation of the sentence. Even so, we find that Peterson had at least two additional opportunities to object, and we therefore limit our review to plain error.

Unlike waiver, which occurs when a defendant intentionally relinquishes a known right, forfeiture results from a defendant's failure to assert his rights in a timely manner. *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also United States v. Staples*, 202 F.3d 993, 995 (7th Cir. 2000) ("Where waiver is accomplished by intent, forfeiture comes about through neglect."). Forfeited claims are therefore reviewable under a plain error standard. *Olano*, 507 U.S. at 733 (explaining that plain error review applies to the forfeiture of a "constitutional right, or a right of any other sort" (internal quotation marks omitted)).

In *United States v. Heilprin*, 910 F.2d 471 (7th Cir. 1990), this court held that plain error review applied where a defendant contested the probation officer's authority to produce a sentencing recommendation and the constitutionality of the federal rule allowing for the confi-

dentiality of such a recommendation without having objected to the PSR in the district court. *Id.* at 474 (describing the defendant's conduct as "waiver" but treating it as forfeiture). There, we explained that the defendant could have raised his objection to the to the probation officer's recommendation before sentencing, during the sentencing hearing, or in a post-sentencing motion. *Id.* Recognizing that the defendant did not contest the PSR at any of those points, we explained "[i]t is by now the clear rule in this circuit that a defendant who has been afforded such opportunities to raise a sentencing challenge to the district court must avail [himself] of [those] opportunities, or risk [forfeiture] of the claim on appeal." *Id.*

Here, Peterson is not objecting to the probation officer's authority to produce a recommendation and is not objecting to a simple numeric recommendation as to what the sentence should be. Instead, he is objecting to the probation officer's inclusion of her explanation, rationale, or justification as a part of the confidential recommendation. According to Peterson, he had no knowledge that the confidential recommendation contemplated under the federal rules included such analysis. Although we do not hold Peterson responsible for not having objected to this portion of the PSR prior to his sentencing hearing, once he became aware of the confidential recommendation, Peterson could have objected to the district court's consideration of the justification during or after the hearing.

Peterson argues that even if there is "not a law that says" an attorney cannot object during the imposition of

a sentence, "it would be, at very least, a serious breach of decorum." Appellant Br. at 20 n.7. He also suggests that defense counsel could not have been sure where the district court was taking its analysis of the probation officer's comments before it announced the actual sentence. Even if this is true, Peterson had the opportunity to raise an objection that would not have required interrupting the district judge during his explanation of the sentence. Before concluding the sentencing hearing and issuing the judgment, the district court asked the parties whether there was anything further for the court to address. At that point, the judge explicitly invited the parties to speak, and defense counsel could have raised an objection to the court's consideration of the confidential recommendation. Moreover, in *Heilprin*, we recognized that the defendant could have raised such an objection in a post-sentencing motion. *Heilprin*, 910 F.2d at 474.

Peterson did not avail himself of the opportunity to object prior to the conclusion of the hearing or in a post-sentencing motion.[1] We therefore conclude that he forfeited his claims and review the alleged violation for plain error. We will "correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity, or public reputation of judicial

---

[1] Here, Peterson filed his post-sentencing motion after filing his notice of appeal. He did not object to the district court's reliance on the confidential recommendation, but instead asked the district court to compel the probation officer's disclosure of the full version of the PSR.

proceedings." *Olano*, 507 U.S. at 736 (internal quotation marks and alterations omitted).

### B.  Fifth Amendment Challenge

Peterson first challenges the district court's consideration of the probation officer's justification contained in the confidential recommendation as a violation of his right to due process under the Fifth Amendment. He does not contest that the recommendation contained facts that were not disclosed in the PSR, but argues that his inability to view the recommendation prior to sentencing prevented him from responding to the probation officer's analysis. In his brief, Peterson explicitly frames his appeal as an as-applied challenge to the district court's procedure. He explains that he had no notice that the court would use the evidence demonstrating his lack of drug abuse and criminal involvement during childhood and his supportive family against him.

### 1.  Confidential recommendations and Local Rule 32.1

In order to assist district courts in compiling evidence and fashioning reasonable sentences in criminal cases, Federal Rule of Criminal Procedure 32 requires probation officers to conduct presentence investigations and submit reports of their investigations to the court. *See* Fed. R. Crim. P. 32; *see also United States v. Veteto*, 945 F.2d 163, 166 (7th Cir. 1991) ("The duty of the probation officer, who acts as an arm of the court, is to compile information and make a recommendation to the judge.").

Rule 32 requires the probation officer assigned to a case to disclose her report to the defendant, the defendant's counsel, and the attorney for the government prior to sentencing, and the district court must ensure that the defendant and his counsel have read and discussed the report before imposing the sentence. Fed. R. Crim. P. 32(e)(2); 3 Wright, Fed. Prac. & Proc. Crim. § 528 (4th ed.).

There are two exceptions to Rule 32's disclosure requirement. First, subsection (d)(3) allows the probation officer to exclude from the version of the PSR given to the defendant any information relating to confidential sources, diagnoses that could seriously disrupt a rehabilitation program, and "any other information that, if disclosed, might result in physical or other harm to the defendant or others." Fed. R. Crim. P. 32(d)(3)(A)-(C). Second, a court may direct, "by local rule or by order in a case," that the probation officer not "disclose to anyone other than the court the officer's recommendation on the sentence." Fed. R. Crim P. 32(e)(3). At the time of its enactment, the purpose behind the latter exception was to allow probation officers the opportunity to provide a candid assessment of the defendant to the court and to protect the effectiveness of the probation officer in the supervisory context. *See* Fed. R. Crim. P. 32 Advisory Comm. Note (1974) ("Any recommendation as to the sentence [from the probation office] should not be disclosed as it may impair the effectiveness of the probation officer if the defendant is under supervision on probation or parole.").

In line with Rule 32(e)(3), the Northern District of Illinois has adopted a local rule, which specifies that

"[t]he recommendation of the presentence report shall be submitted only to the Court." LCrR. 32.1(f). The rule also indicates that "[t]he recommendation section shall not include any factual information not already contained in the other sections of the report." *Id.* The recommendation itself is therefore given to the judge confidentially, but every underlying fact on which the recommendation is based must be disclosed to the parties. According to a 2002 Committee Comment to Local Rule 32.1(f), the current language reflects a "long standing" and "commonly accepted practice" that has "existed for decades." LcrR. 32.1(f) Committee Comment (2002 Amend.).[2]

---

[2]  The Committee Comment also states that "[a]ll district courts in this Circuit treat the recommendations as confidential." LcrR. 32.1(f) Committee Comment (2002 Amend.). This may be true as a matter of practice, but only four out of the seven district courts in this circuit appear to have enacted a local rule requiring the confidentiality of the sentencing recommendation in all cases, *see id.*; S.D.Ind.L.R. 13.1 ("The sentence recommendation provided to the court by the probation office will not be disclosed except to the court."); SDIL-LR Cr. 32.1(b) ("The probation officer's recommendation shall not be disclosed to either party and shall be sealed separate from the presentence report following disposition."); CDIL-LR 32.1(D) ("Unless otherwise ordered by the presiding judge, the probation officer's recommendation on the sentence will not be disclosed."), and one district court explicitly allows each judge to disclose the sentencing recommendation on a case-by-case basis, *see* N.D. Ind. General Order 2001-1, In Re: Presentence

(continued...)

## 2. Due process requirements

Here, Peterson is not challenging the probation officer's authority to submit a confidential recommendation to the district court, a procedure that courts have consistently upheld as constitutional. *See, e.g.*, *Heilprin*, 910 F.2d at 474 (explaining the constitutional propriety of confidential sentencing recommendations); *United States v. Gonzales*, 765 F.2d 1393, 1398 (9th Cir. 1985) ("Although it is true that the probation officer is adverse to the defendant in some respects, when the officer is preparing a presentence report he is acting as an arm of the court and this permits ex parte communication."). Rather, he is suggesting that the probation officer's explanation, rationale, or justification contained in the confidential recommendation amounts to an argument to which a defendant has no opportunity to respond.

"Due process entitles defendants to fair sentencing procedures, especially a right to be sentenced on the basis of accurate information." *United States v. Pless*, 982 F.2d 1118, 1127 (7th Cir. 1992). Consequently, we have held

---

[2] (...continued)

Procedures, 13 (1994) ("At the direction of each sentencing judge, the recommendation may be released to the defendant, defense counsel and attorney for the government, separate from the presentence report addendum. The recommendation shall be returned to the probation department at the end of the proceedings."). Neither the Eastern District of Wisconsin nor the Western District of Wisconsin appears to have a local rule addressing this issue.

that if all facts on which the probation officer's recommendation is based appear in the PSR, the district court's consideration of the recommendation at sentencing does not violate due process. *Heilprin*, 910 F.2d at 474. In *Heilprin*, we explained that a defendant has "no constitutional or statutory right to be informed of the particular sentencing recommendation made by the probation office to the district court." *Id.*

In *United States v. Baldrich*, 471 F.3d 1110 (9th Cir. 2006), the Ninth Circuit considered a similar challenge to the constitutionality of Rule 32(e)(3). The defendant in *Baldrich*, like Peterson, asserted a violation of his right to due process and argued that Rule 32(e)(3) is "unconstitutional to the extent it allows withholding of any facts, analysis, or opinions contained in the sentencing recommendation." *Id.* at 1113. The Ninth Circuit pointed out that the defendant had received all of the underlying facts on which the confidential recommendation relied and followed this court and others in concluding that compliance with the requirement to disclose factual information satisfies due process. *Id.* The court did not limit its holding to the numeric recommendation contained in the confidential portion of the PSR, but extended it to cover the probation officer's reasoning. *Id.*

Here, the confidential portion of the PSR that the district court referenced during sentencing contained both a numeric recommendation and the probation officer's analysis justifying that recommendation. Importantly, however, all of the underlying factual information supporting the probation officer's rationale is con-

tained in the version of the PSR both parties received prior to sentencing. Under the precedent in this circuit and others, Peterson received the process he was due: he reviewed the PSR and "had an opportunity to refute its contents before the district court." *Heilprin*, 910 F.2d at 474; *see also United States v. Headspeth*, 852 F.2d 753, 755 (4th Cir. 1988) ("While a convicted defendant retains a due process right not to be sentenced on the basis of materially false or inaccurate information, access to the sentencing recommendation, which is nothing but a subjective judgment made on the basis of facts contained elsewhere in the report, is not necessary to vindicate that interest." (internal citations omitted)). Peterson was aware that the district court could consider the facts contained in the PSR relating to his personal and family history, and he should have anticipated that the district court might disagree with his argument in mitigation.

Peterson incorrectly asserts that the Supreme Court's reasoning in *Gardner v. Florida*, 430 U.S. 349 (1977) (plurality opinion), requires a contrary result. The defendant in *Gardner* was convicted of first-degree murder and sentenced to death. *Id.* at 351. Once the case reached the Supreme Court, it had become clear that a portion of the PSR on which the sentencing judge had relied had been designated confidential and had not been disclosed to defense counsel, which the plurality deemed to be an error. *Id.* at 353-54. In reversing the sentence imposed by the district court, the plurality explained that the necessity of adversarial debate during the truth-seeking process demonstrates the "importance of giving counsel

an opportunity to comment on *facts* which may influence the sentencing decision in capital cases." *Id.* at 360 (emphasis added).

Even if the plurality's decision in *Gardner* is not limited to the death penalty context, the Court did not address the disclosure of a probation officer's confidential sentencing recommendation. Rather, it held that the parties should be able to review and comment on the factual information contained in the PSR, which could influence the court during sentencing. *Id.* at 360. The *Gardner* decision is therefore consistent with the cases in this circuit and others holding that due process requires the full disclosure of all facts on which the probation officer's sentencing recommendation relies.

By ensuring that Peterson received and reviewed all of the facts referenced in the probation officer's sentencing recommendation, the district court gave Peterson all the process he was due, and we therefore find no Fifth Amendment violation or plain error. The policy question nevertheless remains whether disclosure of a probation officer's sentencing recommendation is desirable even if not constitutionally compelled. A blanket rule against disclosure of a probation officer's sentencing recommendation, though explicitly endorsed by several of the district courts in this circuit, is far from universal. Many district courts favor releasing the sentencing recommendation to the parties and others leave disclosure to the district judge's discretion. *See, e.g.*, E.D. Cal., L.R. 460(c) ("A copy of the probation officer's proposed presentence report, including the probation

officer's recommendations, shall be made available to the United States Attorney's Office and to defense counsel not less than thirty-five (35) days before the date set for sentencing hearing."); S.D. Ohio Crim. R. 32.1(f) ("[U]nless otherwise ordered in an individual case, the Probation Officer's recommendation, if any, on the appropriate sentence shall be disclosed in all copies of the initial and final presentence report including those furnished to counsel."); W.D.Mich LCrR 32.2(b) ("The sentencing judge may . . . direct the probation officer not to disclose the officer's recommendation on the sentence."). The American Bar Association Criminal Justice Section has adopted a standard providing that all rules of procedure "should prohibit confidential sentencing recommendations." ABA Crim. Justice Section: Sentencing, Standard 18-5.7, 3d ed. (1993).

Concern about an absolute non-disclosure rule stems from a desire to maintain openness in the sentencing process. Because so few defendants proceed to trial, the sentencing hearing is often a defendant's first and last opportunity to present argument to the court. And probation officers play an important role in that process. We have often explained that a probation officer "acts as an arm of the court" during sentencing and does not take on the role of an adversary. *Veteto*, 945 F.2d at 166; *see also United States v. Rosengard*, 949 F.2d 905, 908 (7th Cir. 1991). But we have also urged "district judges, U.S. Attorneys, and probation officers [to take steps] to prevent the perception that probation officers are 'surrogate prosecutors.'" *United States v. Turner*, 203 F.3d 1010, 1014 (7th Cir. 2000). To the extent confidential

sentencing recommendations create the appearance of
hidden information or a secret tilt in the government's
favor, we offer the view that our federal sentencing
procedures might be better served by allowing the
parties to evaluate any analysis that might form the
basis of a judicial determination.[3]

We do not suggest that district courts should neces-
sarily release confidential sentencing recommendations
in all cases and under all circumstances. But the federal
rules allow courts the opportunity to make these deter-
minations on a case-by-case basis. *See* Fed. R. Crim.
P. 32(e)(3) ("By local rule *or by order in a case*, the court
may direct the probation officer not to disclose to any-
one other than the court the officer's recommendation
on the sentence." (emphasis added)). If a district court is
concerned about a probation officer's ability to produce
a forthright assessment because of a potential supervisory
relationship or a case-specific factor, the court could
request that the probation officer submit the sentencing
recommendation to the court confidentially. An order
from the district court requiring confidentiality would
produce the added benefit of informing the defendant
that a confidential recommendation exists, something
that could remain a mystery to defendants when the

[3] This disclosure would exclude any information that falls
within the exception identified in Fed. R. Crim. P. 32(d)(3),
including confidential sources, diagnosis that could disrupt a
rehabilitation program, or "any other information that, if
disclosed, might result in physical or other harm to the defen-
dant or others." Fed. R. Crim. P. 32(d)(3)(A)-(C).

court does not reference the recommendation during sentencing. If, on the other hand, no such concerns exist because of the structure of the probation office or because of the nature of the case, the district court could direct that the parties receive all portions of the PSR, including the probation officer's sentencing recommendation. This practice could allow the defense an opportunity to see and comment on the recommendation and independently confirm that all facts forming the basis for the recommendation are contained elsewhere in the report.

Because due process does not *require* disclosure of the sentencing recommendation, we have conducted an independent review of the probation officer's analysis and can confirm the district court's conclusion that all facts on which she based that analysis are contained in the version of the PSR given to the parties in this case.

## C.  Sixth Amendment Challenge

Notwithstanding our concern about rules requiring the confidentiality of sentencing recommendations, Peterson's Sixth Amendment challenge to the procedure fairs no better. Peterson contends that his inability to review and respond to the probation officer's confidential recommendation prior to sentencing amounted to a violation of his Sixth Amendment right to counsel. Specifically, he argues that the district court's consideration of his childhood and family circumstances as a potential aggravating factor was unforeseeable and that his counsel was unable to address or refute the probation officer's

analysis prior to sentencing. Peterson does not assert that his counsel committed any professional errors. Instead, he maintains that he was in the same position he would have been in had he been unrepresented because his counsel could not respond to arguments that were not disclosed prior to sentencing.

Peterson seemingly argues for the application of the standard articulated in the Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court recognized that a Sixth Amendment violation will result if the defendant's "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659. In order for this standard to apply, however, the attorney's failure must be complete, meaning that the defense counsel must have "failed to oppose the prosecution throughout the sentencing proceeding as a whole." *Bell v. Cone*, 535 U.S. 685, 697 (2002).[4]

---

[4] Ordinarily, when a defendant challenges a sentence on the basis of ineffective assistance of counsel, the *Strickland* standard will apply. *See Bell*, 535 U.S. at 697-98 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A *Strickland* claim "has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 511 (2003). Here, Peterson does not argue that his sentence would have been different had his counsel received the probation officer's recommendation prior to sentencing. Thus, even if he could show that his counsel's performance was inadequate, Peterson

(continued...)

Here, Peterson's counsel engaged in a comprehensive discussion of what he viewed to be the mitigating factors in the case. He explained that Peterson's criminal activity resulted from his drug use and that Peterson had never used a weapon to commit a robbery. He emphasized Peterson's motivation to rehabilitate and argued that the court should consider his strong support group, including his family and friends, when fashioning a sentence. Surely, Peterson's counsel could have formulated a more tailored response to the district court's interpretation of Peterson's personal background had he known the probation officer would adopt a different view of those facts. But there is nothing remarkable about the probation officer's gloss on Peterson's personal history. And this court has expressed that "[w]hat a defendant proposes as an argument in mitigation may sound to the court more like a factor in aggravation." *United States v. Vasquez-Pita*, 411 F. App'x 887, 892 (7th Cir. 2011) (nonprecedential decision). "That is a risk inherent in discretionary sentencing," *id.*, not a basis for a Sixth Amendment claim.

### III. Conclusion

For these reasons, we AFFIRM the sentence imposed by the district court.

---

[4] (...continued)
would be unable to make out an ineffective assistance of counsel claim under *Strickland*.