In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1517

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES HERBERT WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CR 00026-1 — **Elaine E. Bucklo**, *Judge.*

ARGUED AUGUST 8, 2017 — DECIDED AUGUST 22, 2017

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK, *Circuit Judges*.

BAUER, *Circuit Judge*. While on supervised release following his conviction for failing to register as a sex offender, James White pleaded guilty to new state charges of credit-card fraud and theft. The district court, in response, revoked White's supervised release and ordered him reimprisoned for 20 months—less than what is recommended in the sentencing guidelines. White argues that this term of reimpris-

onment is plainly unreasonable because, he says, the prosecutor and probation officer made inaccurate statements during the revocation hearing. We acknowledge that the probation officer conducted himself inappropriately, but we are not persuaded that his misguided advocacy affected the outcome of the proceeding. White's new prison term is reasonable, and we thus affirm the judgment.

## I. Background

In 2002, White was convicted in the Circuit Court of Cook County, Illinois, of battery and sexual exploitation of a minor. As a result, he was required to register as a sex offender for 10 years. But in 2009 he failed to update his registration to reflect that he was "habitually living" in Des Moines, Iowa, and in 2011 he was charged in federal court with failing to register as a sex offender, 18 U.S.C. § 2250. White pleaded guilty and was sentenced to 30 months' imprisonment and 5 years' supervised release. While on supervised release, he was to refrain from committing additional crimes, obtain his probation officer's approval before leaving the judicial district, and participate in sex-offender evaluation and treatment if directed by the probation officer.

After White was released from prison, the government moved to modify his conditions of supervision to require that he submit to a psychiatric evaluation and take prescribed medications. Underlying this request was a report from White's probation officer explaining that White had "demonstrated difficulty regulating his emotions and became explosive" during a meeting with a psychosexual-treatment provider. In that written report the probation of-

ficer asserted that White had "evidenced similar behavior while residing at the residential re-entry center," where he once "tossed a food tray against a window." The probation officer wanted a psychiatric evaluation to explore White's impulse-control issues.

The district court granted the motion in part and ordered White to submit to a psychiatric evaluation. White complied, and the psychiatrist concluded that no psychiatric intervention was necessary. White then requested that his conditions of supervised release be modified to allow unsupervised contact with his grandchildren, and the court obliged.

About three months later, the government moved to revoke White's supervised release based on a second report from the probation officer. This new report identified two violations of White's release conditions: (1) commission of new crimes—theft and credit-card fraud—and (2) leaving the district without permission on two occasions when he traveled to Iowa. The probation officer also noted an ongoing criminal investigation into allegations of robbery and assault related to White's time in Iowa. White's theft and fraud crimes, to which he pleaded guilty in state court, constitute Grade B violations. *See* U.S.S.G. § 7B1.1(a)(2). The probation officer calculated the policy-statement range to be 21 to 27 months of custody, based on White's category VI criminal history. By statute, however, the term of reimprisonment was capped at 24 months by 18 U.S.C. § 3583(c)(3). The probation officer thus recommended 24 months.

The district court conducted a revocation hearing over three days. On the first day, the prosecutor asserted that the probation officer's recommendation of 24 months was reasonable and that the term should be imposed consecutively

to White's 6-year sentence on the new state convictions. White, the prosecutor argued, had "shown a complete lack of respect for the law," and "from the very beginning … everything was an argument." "Everything was difficult," the prosecutor asserted, and just "getting him to submit to a psychological evaluation was difficult." Defense counsel disagreed that White had shown extreme disrespect for the law; rather, counsel asserted, White's conviction for failing to register as a sex offender had occurred after he had faithfully registered for nine years and then, during the tenth year, took a week-long trip to Iowa and failed to register. The prosecutor countered that she found "it hard to believe that a federal judge imposed a 30-month sentence of imprisonment followed by 60 months of supervised release based on nine years of perfect registration" followed by one failure to register during a temporary trip to another state. White himself stated that he had registered for nine years. But his timeline does not add up: he was convicted of sexual exploitation of a minor in 2002 and first failed to register just seven years later, in 2009, although he was not *indicted* for that crime until 2011. Neither party introduced evidence to substantiate its version of events, and the presentence report from the 2011 prosecution is not part of the record.

The district court then asked about the underlying crime that required White to register as a sex offender beginning in 2002. White himself answered, "Consensual sex with a minor." Hearing this, the probation officer interrupted and, without being invited by the judge or prosecutor, challenged White's statement: "There is no consensual sex with a minor. … You can't consent legally. It's a crime." After a terse exchange between the probation officer and defense counsel,

the court ended the debate by stating, "That's not something that's, I think, ever in any way before me … ."

There also was disagreement about the age of the victim of White's sex offense: the prosecutor said 13; White said 16. Again, neither party supported its position with evidence.

As for the prosecutor's assertion that "everything was an argument" with White, defense counsel responded that White had been entitled to object to proposed modifications of the terms of supervised release. More importantly, counsel explained, White had submitted to the psychological examination when it was ordered, and the psychiatrist concluded that treatment or other intervention was not warranted.

During allocution White apologized for committing the 2002 crime and for failing to register, but he went on to say that the "failure to register and the credit card case" were the "only trouble" he'd been in since 2002. And, White asserted, he had committed the credit-card crime because he was having trouble regaining his disability benefits and wanted to contribute financially to his family. He explained that, due to restrictions on where he could live, he was unable to reside with family. But, White continued, he felt obligated to support his wife, children, and grandchildren, which he could not do on $200 per month in food stamps. So he used fraudulently obtained credit cards to gain cash to pay for housing and other bills.

When the district court asked that "somebody" supply details about the credit-card case, the probation officer jumped in and explained that White had used counterfeit government credit cards to purchase gas. (White later elabo-

rated that he had used the cards to buy gas for others, who would then give him cash.) Even as the prosecutor tried to address the court, the probation officer didn't yield:

> Your Honor, I mean, the—if I may, the fact of the matter is this: You know, from a behavioral perspective, Mr. White has a severe anti-social personality disorder. He is sociopathic. There is no—I'm a licensed clinical social worker. I've been a mental health professional for almost 20 years now. I've been working in this job for 19 years, supervising cases like this. It's not often that we see people of a sociopathic nature such as Mr. White. It is what it is. It is what it is. And he needs to be punished. And the community needs to be protected from the danger that he poses. He committed a crime while he was on supervision. There is allegations that he has committed other crimes while he is on supervision. There is an active warrant in the state of Iowa for a robbery that he may have committed. So—and—that's the—that's the main issue. We're not talking about somebody that will benefit from supervision. We're not talking about somebody that will benefit from treatment services. We're talking about a person who has a very severe predilection to predatory behavior; whether it be financial, physical, whatever it may be.

In response, defense counsel pointed out that, contrary to the probation officer's appraisal, the psychiatrist had concluded that psychiatric intervention wasn't necessary. The probation officer, without waiting for the prosecutor to speak, retorted that anti-social, sociopathic individuals are

"not amenable to treatment" and that "therapeutic interventions are not clinically indicated."

The district court concluded that 20 months' reimprisonment, consecutive to White's state sentence, would be appropriate. The court opined that White was minimizing his fraud crime, and that there should be punishment specific to that violation of supervised release. The court went on to explain that it would not impose a term of supervised release:

> [I]t certainly doesn't sound like you're amenable to any supervised release. Based on the admissions and what I'm hearing here about—from you, I am going to, indeed, revoke your supervised release, and I'm going to sentence you to 20 months consecutive sentence in the Bureau of Prison. And that will not be followed by any supervised release. There is no point to it. So that will end it.

Judgment was not entered that day, however, because the parties were unsure whether White was entitled to credit toward his federal term for time served in the Cook County jail on a federal detainer. The court directed the parties to return after investigating this question.

The parties appeared twice more before judgment was entered. On February 22, 2017, the lawyers represented that White wasn't entitled to credit because his time spent in the Cook County jail already had been credited against his state sentence for the credit-card fraud. The district judge then asked the lawyers whether she needed to do anything more before entering judgment. The prosecutor suggested that the

court specifically tie the term of reimprisonment to the factors listed in 18 U.S.C. § 3553(a). The judge then stated:

> Okay. Well, I certainly did talk about the nature and circumstances of the offense. We spent quite a bit of time on that. And I think the history and characteristics of Mr. White. I specifically declined to enter any supervised release following his re-incarceration because it's, I found, and do find, that he wasn't complying with the conditions of supervised release, and it seemed to be really no point to it. The serious crime is, on which I'm basing the sentence, is that he committed credit card fraud while he was on supervised release.

After defense counsel interjected that the court had not specifically discussed the need for the term of reimprisonment to run consecutively to, rather than concurrently with, White's state sentence, the court said it needed more time to review the record and again continued the hearing.

When the parties returned for the second time, the district court mostly reiterated its reasons for revoking White's supervised release and imposing 20 months' reimprisonment. The court referenced White's possession of government credit cards and repeated fraudulent use of them, and noted that White had minimized the seriousness of his criminal conduct. Next, the judge discussed "the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment," stating that White "had already received a sentence from the state court, but that really wouldn't at all take into account the violation of supervised release."

The district judge went on to explain her decision not to impose a period of supervised release, stating that supervision had "certainly caused Mr. White … a lot of trouble." The judge also alluded to the probation officer's comments:

[I]t was also clear that the probation officer did not want him to have further supervised release because it became clear, at least in the probation officer's view, which seemed to be—I found was substantiated by Mr. White's conduct that, which is not supervisable. And is not—is not, in other words, is not amenable to supervision.

The court then entered a judgment finding that White had violated his conditions of supervised release in two ways: committing another crime and traveling outside the district without permission.

## II. Discussion

On appeal, White argues that his below-guidelines term of 20 months, to run consecutively to his state sentence, is plainly unreasonable. This contention goes nowhere; on appellate review a below-guidelines term is presumed reasonable, *United States v. Mbaye*, 827 F.3d 617, 622 (7th Cir. 2016), and White has not offered any reason to disregard that presumption.

Rather, the crux of White's argument is that the prosecutor and probation officer injected unreliable and inaccurate information. This contention sounds in due process rather than substantive unreasonableness. *See United States v. Chatman*, 805 F.3d 840, 843–44 (7th Cir. 2015). Defendants have a due process right to be sentenced on the basis of accurate information. *See id.*; *United States v. Mejia*, 859 F.3d 475, 478

(7th Cir. 2017). White gives examples of statements from the prosecutor or probation officer that, he says, are inaccurate or unreliable. In particular, he asserts that (1) the prosecutor, without any evidence, challenged his version of the facts underlying both his state sex offense and his conviction for failing to register, (2) the prosecutor misrepresented that the district court had modified White's release conditions to allow him to live with his family, when actually the court had done no more than permit unsupervised visits with his grandchildren, (3) the prosecutor and probation officer both alluded to nonexistent violations of supervised release and exaggerated in stating that White had continuously failed to follow the law, and (4) the probation officer launched a "vicious personal attack" on White that was unprofessional and turned the judge against him. White further contends that these statements prompted the judge to impose a longer prison term on the belief that he wouldn't be amenable to supervision.

Most of the alleged inaccuracies are inconsequential, so we do not discuss them. But we are troubled by the probation officer's inflammatory and unprofessional statements, which far exceed the bounds of the probation officer's role as a neutral information gatherer. *See United States v. Peterson*, 711 F.3d 770, 778–79 (7th Cir. 2013) (explaining that probation officers do not have an adversarial role and should not be allowed to be perceived as "surrogate prosecutors"). The probation officer insisted that he is qualified to know that White "has a severe anti-social personality disorder," that he "is sociopathic," and that "the community needs to be protected from the danger that he poses." And the probation officer—again citing his own opinion about his professional qualifications—further insisted that White would not benefit

from supervision, and "has a very severe predilection to predatory behavior."

As an arm of the court, a probation officer is not supposed to take an adversarial role in a sentencing or revocation hearing, *Peterson*, 711 F.3d at 778, and that's just what the probation officer did here. Moreover, despite his self-proclaimed expertise, the probation officer's perspective finds scant support in the record. Indeed, the government wisely refrains from defending the probation officer's conduct or contesting White's argument that the probation officer's accusations lack factual support, instead arguing that the district court did not rely on the probation officer's inflammatory statements.

While the probation officer had reported one instance of White losing his temper at the halfway house and throwing a food tray, the only psychiatric evaluation in the record—from a psychiatrist—concluded that clinical intervention wasn't necessary. At the time of sentencing, the only violent crimes that White had been convicted of committing in the previous fifteen years were the 2002 battery and sex offense—the details of which are not in the record. And White's only convictions during the intervening years were for not registering as a sex offender and credit-card fraud. These acts, while criminal, do not justify condemning White as a dangerous sociopath. And if there are other facts to support the probation officer's assessment, they were not presented to the district judge.

Still, the probation officer's tirade, while wildly inappropriate, did not constitute "misinformation of a constitutional magnitude." *See United States v. Tucker*, 404 U.S. 443, 447

(1972). The district court explained the need for a consecutive prison term, without further post-incarceration supervision, to specifically address White's poor adaption to supervision. That term—which is less than what the Sentencing Commission *and* the probation officer had recommended—is wholly justified by the record before the district judge.

One final note: At oral argument, the government asked us to modify the judgment to reflect that the district court only found *one* violation of supervised release rather than two. This request is well taken. The district court's judgment lists two violations, but during the revocation proceedings the court repeatedly had said it was concerned only with White's violation of the condition forbidding new criminal conduct. The court did not find that White had violated the condition of release restricting his travel out of the judicial district.

### III. Conclusion

The judgment is MODIFIED to strike the finding that White violated the conditions of his supervised release by leaving the judicial district without permission. In all other respects, the judgment is AFFIRMED.